630 So.2d 609 (1993)
Robert BLACK, a/k/a Pop, Appellant,
v.
STATE of Florida, Appellee.
Nos. 91-2888, 91-3143 and 91-3144.
District Court of Appeal of Florida, First District.
December 17, 1993.
Rehearing Denied January 27, 1994.
*611 Nancy A. Daniels, Public Defender, Glen P. Gifford, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Charles T. Faircloth, Jr., and Carolyn Mosley, Asst. Attys. Gen., Tallahassee, for appellee.
*612 SMITH, Judge.
In this consolidated appeal,[1] appellant raises numerous issues regarding the validity of his convictions and sentences. We affirm the convictions and all but two of the sentences.
Appellant was charged in a twenty count indictment with several counts of armed robbery, armed burglary and armed kidnapping. These offenses arose out of three separate robberies in Duval County: a robbery of a Service Merchandise store (DCA Case No. 91-2888); a Sports Authority store (DCA Case No. 91-3144) and a Scotty's store (DCA Case No. 91-3143). A large quantity of merchandise as well as cash was taken from each store during the robberies. Following a jury trial, appellant was found guilty as charged on all twenty counts. He was found to be a habitual violent felony offender, and received several life sentences.
As noted, appellant seeks reversal based upon numerous alleged errors in the trial of the three cases, as follows: (1) the admission into evidence of items seized, during a search of his residence, which were not identified in the search warrant (Service Merchandise and Sports Authority trials); (2) the denial of a motion to suppress confession (Service Merchandise, Scotty's and Sports Authority trials); (3) the admission of Williams[2] rule evidence regarding the Scotty's robbery (Service Merchandise and Sports Authority trials); (4) the admission of testimony regarding out-of-court identification of appellant (Service Merchandise trial); (5) the denial of defense counsel's request to defer opening statement until the close of the state's case (Service Merchandise and Sports Authority trials); (6) prosecutorial misconduct in arguing admissibility of videotapes seized by police during search of appellant's residence (Service Merchandise trial); (7) the trial court's improper comment on the evidence and contradiction of defense counsel in the presence of the jury (Scotty's trial); (8) the denial of motion for judgment of acquittal on the kidnapping charge (Scotty's trial); (9) error in imposing a life sentence as a habitual violent felony offender (Service Merchandise trial); (10) the imposition of consecutive minimum mandatory sentences under the habitual offender statute (Service Merchandise and Sports Authority trials).

I.
Appellant became a suspect after he was identified by a Scotty's employee and a Service Merchandise employee upon viewing a photospread. Armed with a search warrant and arrest warrant, police arrested appellant at a residence he shared with his girlfriend, Phyllis Hill. During the search, police found and seized numerous pieces of jewelry  rings, watches, earrings  electronic equipment, ammunition, sports equipment, a blue "tote bag," burgundy suitcases, and other merchandise. Also found during the search were newspaper clippings concerning the Sports Authority robbery, large quantities of cash, and forty individually wrapped packages of marijuana. The merchandise recovered in the search was recognized by the officers as being similar to items reported to have been taken in the three robberies. The police also found gloves, ski masks, and paint-spattered trousers resembling those worn by the robber which matched the items described in the search warrant. Cocaine was also found on the appellant after his arrest outside his residence at the time of the search.
At the trial of the Sports Authority robbery, the state was allowed to introduce into evidence a sports bag, 11 batting gloves, two Franklin aluminum softball bats, four boxes of ammunition of various calibers, a red gun sleeve, and a .45 caliber pistol case. Witnesses to the robbery testified that the perpetrator took similar items, and that he carried a large caliber automatic pistol. No one saw the robber take batting gloves, but the robber was observed walking past a rack containing gloves similar to those seized at appellant's residence. Similarly, during the trial of the Service Merchandise robbery, the *613 state was allowed to introduce items of jewelry found in a safe located in a closet of appellant's residence, and the state also introduced four blank videotape cassettes bearing a Service Merchandise label.
Appellant correctly states the law governing seizure of contraband, not described in a search warrant, discovered in plain view by police while lawfully executing a search warrant. Items in plain view may be seized when (1) the seizing officer is in a position where he has a legitimate right to be, (2) the incriminating character of the evidence is immediately apparent, and (3) the seizing officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112, 123 (1990). Under the third requirement, police must have probable cause prior to seizure. Id.; Arizona v. Hicks, 480 U.S. 321, 326-27, 107 S.Ct. 1149, 1153-54, 94 L.Ed.2d 347 (1987).
Appellant urges, however, that the items listed in the search warrant  the ski mask, pants with paint spots, and brown work gloves  were found by the police within the first 10 to 15 minutes of the 45 minute search. Once the police have acquired the items named in the search warrant, appellant argues, no additional search may take place. Horton v. California, supra. Upon examination of these arguments in the light of the record presented, we find that it is difficult to piece together the precise order of events that occurred during the search. This is especially complicated by the fact that several officers simultaneously searched various parts of appellant's residence and his automobile, and it is not clear at exactly what point each of the officers had specific knowledge that the search warrant items had been recovered.
At the suppression hearing there was testimony that appellant's automobile, which was included in the search warrant, was searched immediately after appellant was arrested. In the automobile were found baseball bats matching the description of bats stolen from the Sports Authority store; also found in the car was a gold chain believed to have been taken from the Service Merchandise store. There was testimony that a large quantity of jewelry was found on top of a dresser prior to discovery of the mask and gloves covered by the search warrant. Marijuana was found in a dresser located in a bedroom, and was also seized, prior to discovery of the items listed in the search warrant. The search of the garage, which yielded the ammunition and the gun case, also apparently occurred before the search for the items listed in the search warrant was completed. A blue, sports-type "tote bag," similar to the tote bags known to have been stolen, was discovered by one officer immediately upon entering a bedroom of the residence.
The conclusion is inescapable that the officers conducting the lawfully authorized search were immediately confronted with a virtual "cornucopia" of merchandise recognizable by them as matching the description of merchandise stolen from the several robberies. Considering the evidence in its entirety, we are of the view that appellant has failed to demonstrate that the trial court erred in denying appellant's objections to admissibility of this evidence. While it may appear that some items were seized by some officers after other officers had discovered the items apparently matching those listed in the search warrant, it is difficult to determine at exactly what point the discovery of each item of contraband took place, and at what point each officer was aware that the search for the items listed in the search warrant had apparently been discovered. It is clear, however, from the totality of the circumstances, that the officers had probable cause to believe that the items plainly visible in the house were the fruits of the several robberies appellant was suspected of having committed, and that their seizure of these items was not unreasonable. In Horton v. California, supra, the supreme court held that police armed with a valid search warrant may permissibly seize items not listed in the warrant when the incriminating nature of the items is immediately apparent. To the same effect was the court's earlier decision in Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983), in which the court pointed out that the seizing officer is not required to "know certain items are contraband or evidence of a crime ..."; what is *614 required is that "the facts available to the [seizing] officer would `warrant a person of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime... ." 460 U.S. at 741-42, 103 S.Ct. at 1543, 75 L.Ed.2d at 508. Accord, State v. Heiser, 583 So.2d 389 (Fla. 4th DCA 1991), rev. denied, 593 So.2d 1052 (Fla. 1991).
The determination of a trial court in ruling on a motion to suppress comes to an appellate court clothed with a presumption of correctness, and a reviewing court will interpret the evidence and reasonable inferences therefrom in a manner most favorable to the trial court's ruling. State v. Pye, 551 So.2d 1237 (Fla. 1st DCA 1989). We therefore affirm on this issue.

II.
We next review appellant's contention that his confession was improperly admitted. During the course of the search of appellant's residence, Phyllis Hill, appellant's girlfriend, arrived on the scene and acknowledged the home as being her place of residence. Marijuana was found in a dresser containing women's clothing, and Phyllis Hill was arrested. She was taken to the police station where appellant was being held.
Appellant became aware of Ms. Hill's arrest and later saw her in handcuffs. Appellant became concerned about Ms. Hill, and claimed ownership of the drugs found in his residence. He initially denied any involvement in the robberies, but he later offered to provide details of the robberies if Ms. Hill was not charged for those offenses. Both of the officers present during his subsequent confession testified that it was appellant, not the police, who suggested this disposition as to Ms. Hill.
According to one officer, Detective Robinson, appellant offered to confess if Ms. Hill was released and the car seized during the search was returned to her. Detective Robinson testified that appellant also wanted assurance that he would be charged only with offenses relating to the Service Merchandise, Scotty's and Sports Authority robberies. Robinson also testified, however, that the police never intended to charge appellant with more than these three robberies, so that there was in reality no negotiation on this point on their part. After appellant made his proposal, the police contacted the state attorney's office; upon receiving the state attorney's approval, and while Ms. Hill was present, appellant confessed to his commission of the three robberies.
Following a hearing, appellant's pretrial motion to suppress his confession was denied by the trial court. In so ruling, the trial court found that it was appellant who initiated any negotiations with the police. The court also found that appellant, having spent considerable time in prison,[3] was very much aware of his rights. The trial judge concluded that while appellant may have initiated negotiations with the intent of aiding his girlfriend, such a motive did not render the confession inadmissible.
Appellant argues that his confession was inadmissible because it was induced by promises made by the police, and it was therefore involuntary. See, Williams v. State, 441 So.2d 653 (Fla. 3d DCA 1983), rev. denied, 450 So.2d 489 (Fla. 1984). More specifically, appellant argues that the facts surrounding the confession, even when taken in a light most favorable to sustaining the trial court's ruling, establish that his confession was induced by the promises of the police to release Ms. Hill, to return the car to her, and to charge appellant with only three robberies. These promises, according to appellant, establish a "quid pro quo" for his confession, which renders it inadmissible.
The state argues, in response, that since appellant initiated the negotiations, his free will was obviously not overborne. The state correctly observes that the salient consideration in an analysis of the voluntariness *615 of a confession is whether a defendant's free will has been overcome.
In Frazier v. State, 107 So.2d 16, 21 (Fla. 1958), the supreme court stated:
[a] confession should be excluded if the attending circumstances, or the declarations of those present at the making of the confession, are calculated to delude the prisoner as to his true position, or to exert improper and undue influence over his mind.
(Emphasis added). The passage above emphasized is illustrative of the reasoning of most of the older case law holding certain confessions inadmissible because they were unreliable.[4] That is, confessions given after certain promises and threats lack the guarantee of truthfulness because of the nature of the threats and promises made in a particular case. Thus, the concern in the well-established case law was that these confessions were false,[5] and the rule regarding the admissibility of a confession was a rule of evidence, rather than one of due process.[6]
In Bram v. U.S., 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897),[7] the court utilized a different rationale for judging the admissibility of a confession, holding that a confession is inadmissible when obtained in violation of a defendant's Fifth Amendment right against self-incrimination. The question of whether a confession was true or false was of no concern under this analysis. Rather, confessions obtained in violation of the Fifth Amendment were not admissible because "ours is an accusatorial and not an inquisitorial system." Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). The Bram holding applied only to federal proceedings, however, and it was not until almost 40 years later that federal due process concerns were injected into criminal prosecutions under state law. See, Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936).[8]
The deterrence of offensive police conduct thus became the concern of the court. Consistent with this objective, the Supreme Court indicated in Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), that a confession should not be found inadmissible based on due process considerations when there has been no overreaching by police. Simply put, the Court in Connelly held that absent police wrongdoing, there is no Fifth Amendment violation.
Prior to the decision in Connelly, the Second District Court of Appeal in Fillinger v. State, 349 So.2d 714 (Fla. 2d DCA 1977), cert. *616 denied, 374 So.2d 101 (Fla. 1979), found that a confession had been induced by a promise of leniency and was therefore inadmissible. In Fillinger, the defendant had been arrested for petit theft. After being advised of her rights, the defendant readily admitted the offense. Meanwhile, the interviewing officer was advised by another officer that the defendant fit the description of a person who had committed another offense  that of grand larceny. The interviewing officer advised the defendant that police had enough information to obtain an arrest warrant, whereupon the defendant asked the interviewing officer to explain the warrant procedure. The officer advised that upon issuance of a warrant, the defendant could be arrested at another time, even if defendant was in another city or state. It was the officer's opinion that the defendant was concerned about being arrested at a later time. The officer advised the defendant that the state attorney would be informed of her cooperation, or lack thereof, and that her cooperation would be considered when the amount of a bond was set. In its opinion, the Fillinger court noted the oft-quoted passage, that a confession is inadmissible if it is "obtained by any direct or implied promise, however slight." 349 So.2d at 715.[9] The Fillinger court also stated, citing Frazier, supra:
"if the interrogator induces the accused to confess by using language which amounts to a threat or a promise of benefit, then the confession may be untrustworthy and should be excluded."
349 So.2d at 716 (emphasis added). Thus, in ruling the confession inadmissible, the Fillinger court was emphasizing the initial concern of the case law which focused upon the possibility that a so-called confession could be false.
The Third District, in State v. Beck, 390 So.2d 748 (Fla. 3d DCA 1980), rev. denied, 399 So.2d 1140 (Fla. 1981), held that while promises may have been made to a defendant by police, the promises were not an inducement to confess. Citing cases from Florida as well as from other jurisdictions, the Beck court reversed the trial court's suppression order, observing that "non-particularized comments such as [those] concerning medical or psychiatric assistance which may be provided to the defendant do not result in the exclusion of a confession, so long as the aid is not offered in return for a consequent statement." 390 So.2d at 749 (emphasis in original).
Analogous to the case before us is Bruno v. State, 574 So.2d 76 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991), in which the supreme court upheld a trial court's denial of a motion to suppress a confession. The defendant in Bruno, who was charged and convicted of first degree murder, had been told after his arrest that his 15 year old son was suspected of having been involved in the murder, although police admitted that they did not have any evidence directly implicating the son. The police also advised the defendant that if the son was involved, then he would likely go to jail. Afterwards, the defendant expressed concern about his son, who was then in police custody. When he asked about his son's fate, the defendant was told that only he, the defendant, could know, as the defendant was the only person [besides his son, presumably] who knew the extent of the son's involvement in the murder. The defendant then gave a confession to the crime. The officer who took the confession testified that he told the defendant that the son would not be charged if the defendant gave a sworn statement exculpating his son.
Noting that the police legitimately believed the son was involved, the confession was found by the reviewing court to have been freely and voluntarily made. The supreme court in its opinion stated that statements suggesting leniency are only objectionable if they establish an express quid pro quo bargain for a confession. The court observed that Bruno had been told, before making any confession, that the police would not make any promises to him or the son, and that if Bruno wanted to give a confession, it would be of his own accord. On these facts, the *617 court found there was no "police overreaching," and the fact that Bruno's confession was motivated in part by a concern over his son's welfare did not provide a basis for suppressing the confession.
Here, as in Bruno, there was no police overreaching. Instead, the extraction of any "promises" from the police was induced solely by overtures from the appellant, motivated by his concern for the welfare of his girlfriend. At worst, the police merely acquiesced in appellant's attempt to obtain leniency for his girlfriend, when in fact, the police had no intention of charging her with the robberies. That appellant thought differently does not furnish a basis for invalidating his otherwise voluntary confession. See, State v. Moore, 530 So.2d 349 (Fla. 2d DCA 1988).
Finally, we note that an erroneously admitted confession is subject to harmless error analysis. See, Traylor v. State, 596 So.2d 957, 973 (Fla. 1992); Segarra v. State, 596 So.2d 740 (Fla. 2d DCA 1992). Given the extensive evidence produced at each of the trials pointing to appellant's participation in the robberies, we find that any error in the use of appellant's confession was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).

III.
The trial court allowed the state to introduce evidence of the Scotty's robbery in the Service Merchandise and Sports Authority cases on the ground that this Williams rule evidence was relevant to the issue of identity. Appellant urges that this was error because the state failed to show a unique modus operandi sufficient to establish identity. To establish identity by comparing modes of operation, similarity and an unusual nature of the factual circumstances are required. Drake v. State, 400 So.2d 1217 (Fla. 1981), cert. denied, 466 U.S. 978, 104 S.Ct. 2361, 80 L.Ed.2d 832 (1984). The fact that a collateral crime witness can identify the accused [as in the present case] is insufficient. Dix v. State, 485 So.2d 38 (Fla. 2d DCA 1986). Instead, points of similarity must have some special character or be so unusual as to point to the defendant. Drake, supra; Peek v. State, 488 So.2d 52 (Fla. 1986). The degree of uniqueness required for admission of Williams rule evidence as proof of identity is "fingerprint type of evidence." State v. Savino, 567 So.2d 892 (Fla. 1990). See also, Sias v. State, 416 So.2d 1213 (Fla. 3d DCA 1982), rev. denied, 424 So.2d 763 (Fla. 1982).
At the outset, appellant concedes, as the state and defense stipulated below, that there are certain similarities in the three robberies. All robberies occurred at the end of weekend business; at gunpoint, the robber ordered all store employees into a confined area, and they were told not to come out for ten minutes; the robber disabled the store phones in each instance; the robber carried a large, dark, semiautomatic handgun in each instance; and in each instance, the perpetrator was a tall, bulky black man wearing a plaid flannel shirt, a dark ski mask and gloves. Appellant argues, nevertheless, that there were dissimilarities, which include the fact that in one instance the suspect wore paintsplattered khaki pants, while blue jeans or dark work pants were worn in the other; that the phones were pulled from the wall in one robbery, while the phone lines were cut in the other; and that the perpetrator forced his way into one store after closing hours in one case, while he hid in the store until closing time in another. Appellant further urges, both as to the admission of the Scotty's robbery evidence in the Service Merchandise and in the Sports Authority case, that the introduction of this collateral crime evidence was unnecessary in view of the extensive physical evidence produced by the state, showing that large quantities of merchandise apparently stolen from the Service Merchandise and Sports Authority stores were found in appellant's home. Appellant further contends that introduction of the evidence regarding the Scotty's robbery was particularly egregious in that a witness to that robbery, Nina Grays, made a much stronger identification of appellant as the Scotty's robber than did the identifying witness in the Service Merchandise case.
The state contends, and we agree, that the dissimilarities in the three crimes are not of such magnitude as to overshadow the fairly well-established similarities. As pointed out by the state, in order to be *618 admissible, collateral crime evidence is not required to be so unique that no other perpetrator could have committed both offenses. Rather, the two crimes must share some unique features suggesting the same perpetrator. See, State v. Smith, 586 So.2d 1237 (Fla. 2d DCA 1991). Here, as in the Smith case, the similarities appear to be substantial, while the dissimilarities appear inconsequential.
We find applicable here the pronouncement of the court in Gore v. State, 599 So.2d 978, 984 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 610, 121 L.Ed.2d 545 (1992), in which the court stated:
[T]his court has upheld the use of evidence of a collateral crime where the common points, when considered in conjunction with each other, establish a pattern of criminal activity which is sufficiently unique to be relevant to the issue of identity. [Citation omitted.] While the common points between the [collateral offense] and the [charged offense in Gore] may not be sufficiently unique or unusual when considered individually, they do establish a sufficiently unique pattern of criminal activity when all of the common points are considered together. The cumulative effect of the numerous similarities between the two crimes is the establishment of a unique modis operandi which points to [the defendant in Gore] as the perpetrator... .
Here, the Williams rule evidence sufficiently established facts demonstrating a pattern in regard to the commission of each crime so as to render the evidence admissible: large retail stores were robbed at the end of weekend business; store employees were confined, given similar instructions, and telephones were dismantled; the robber in each instance appeared to have some prior knowledge of the business premises and, the robber in each instance wore a ski mask, gloves, carried a large automatic pistol, and had the same physical characteristics. We agree, as argued by appellant, that standing alone, none of these purported similarities may be sufficiently unique as to be relevant to the issue of identity; however, when each of the circumstances is considered in conjunction with the other, they would appear to rise to the level of uniqueness required for admissibility. Gore v. State, supra. We conclude that appellant has failed to show an abuse of discretion in the admission of evidence regarding the Scotty's robbery.

IV.
We next address appellant's contention that the lower court erred in denying his motion for acquittal on the kidnapping charges in the trial for the Scotty's robbery. According to appellant, the kidnapping offenses were improperly charged, in that the alleged confinement of store employees did not satisfy the requirements of Faison v. State, 426 So.2d 963 (Fla. 1983). In Faison, the supreme court held that because one of the elements of the kidnapping statute is the confinement, abduction or imprisonment of another with the intent to commit or facilitate the commission of a felony, a kidnapping conviction requires a showing that confinement or movement (1) must not be slight, inconsequential or merely incidental to the other crime; (2) must not be of the kind inherent in the nature of the other crime; and (3) must have some significance independent of the other crime such that it makes the other crime easier to commit or substantially lessens the risk of detection. See also, Ferguson v. State, 533 So.2d 763 (Fla. 1988). Appellant argues that any confinement of employees which may have occurred during the robbery of Scotty's actually occurred during the flight from the store, and therefore, the second and third prongs of Faison are not met.
A motion for a judgment of acquittal should be granted only when "the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Lynch v. State, 293 So.2d 44, 45 (Fla. 1974), reaffirmed in, Marshall v. State, 604 So.2d 799 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2355, 124 L.Ed.2d 263 (1993). We find that given the evidence adduced by the prosecution, the matter was properly submitted to the jury. The store employees testified that the perpetrator of the Scotty's robbery forced them at gunpoint from the main building to another area of the store complex *619 where the lumber was stored, and that to reach this area the employees had to unlock and pass through a ten foot high chain link fence. Employees were then placed in a shed, referred to as a wallboard bin and the cutting bay, and were told not to move. The employees testified that they were moved to the shed after appellant had taken possession of the money in the store. Therefore, it is obvious that the movement and confinement in the shed "was not inherent in the nature of the robbery." Also, it is apparent that since the robbery had already been effectuated, the movement and confinement had "some significance independent of" the robbery. Faison, 426 So.2d at 965.
We believe the instant case is distinguishable from Walker v. State, 604 So.2d 475 (Fla. 1992), because of the distance travelled and locale where the store employees in the instant case were left. In Walker, an armed robber ordered the four occupants of the store to go to the back of the store and lie down; three of the occupants complied by moving 30 to 40 feet, but they did not lie down. The fourth moved a distance of 10 feet after a threat by the robber, who then fled the store. There is no indication in the instant case that the distance travelled was slight, inconsequential or merely incidental to the robbery, as in Walker.

V.
We have considered the briefs and arguments concerning other alleged trial errors asserted by appellant, and we fail to find reversible error. Concerning the testimony by Officer Robinson of the witness Willie Smith's out-of-court identification of the appellant from a photospread, we are of the view that notwithstanding the fact that Willie Smith did not himself testify until after the testimony given by Officer Robinson, the requirements of State v. Freber, 366 So.2d 426 (Fla. 1978), were satisfied.
Furthermore, we find that the arguments concerning alleged discrepancies in the testimony of Officer Robinson and witness Smith, and the asserted unreliability of the identification, were not raised or argued in the trial below. There, the objection to Officer Robinson's testimony was that since the witness Willie Smith had not yet appeared in court, any testimony by Officer Robinson as to the out-of-court identification would be hearsay. As noted, Willie Smith did thereafter testify, and he did testify as to the events surrounding the photospread; he also identified appellant in court, and was available for extensive cross-examination by appellant.
As for the trial court's denial of defense counsel's request to defer opening statement until the close of the state's case, appellant concedes that the decision whether to allow deferral of opening statement is basically a question of courtroom procedure over which the trial court has broad discretion. Hawkins v. State, 199 So.2d 276 (Fla. 1967), vacated on other grounds, sub. nom. Hawkins v. Wainwright, 408 U.S. 941, 92 S.Ct. 2857, 33 L.Ed.2d 765 (1972); Joswick v. State, 458 So.2d 408 (Fla. 4th DCA 1984). Our standard of review on this, as for other matters of trial procedure, is whether there was an abuse of discretion. Knapp v. Shores, 550 So.2d 1155 (Fla. 3d DCA 1989), rev. denied, 563 So.2d 634 (Fla. 1990). Here, the trial court gave no reason for denial of defense counsel's request, and we are thus unable to glean from the record any basis for the trial court's ruling. Defense counsel appeared to give a plausible reason why it was deemed advisable to defer opening statement, namely, uncertainty over whether the state intended to introduce the Williams rule evidence. However, even if an abuse of discretion occurred in this ruling, which we do not decide, we are of the view that this would not in itself be sufficient to vitiate the trial proceedings. Applying the harmless error rule, we affirm on this point.
We find without merit, and therefore affirm without discussion, appellant's contentions that the prosecuting attorney was guilty of misconduct in arguing the admissibility of videotapes seized by the police during the search of appellant's residence, and the contention that the trial court made improper comments on the evidence and contradicted defense counsel in the presence of the jury.

*620 VI.
Finally, as to the sentences imposed, we note that habitual offender sentencing is authorized for first degree felonies punishable by life. Burdick v. State, 594 So.2d 267 (Fla. 1992). We therefore affirm the life sentence as a habitual violent felony offender in Case No. 91-2888 (Service Merchandise).
The state concedes, however, that the imposition of consecutive minimum mandatory sentences under the habitual offender statute in the Service Merchandise case, and the Sports Authority case, was error. Daniels v. State, 595 So.2d 952 (Fla. 1992). We note also that subsequent to the filing of the briefs in these cases, the supreme court in Hale v. State, 630 So.2d 521 (Fla. 1993), ruled that the court may not impose two consecutive habitual violent felony offender sentences for crimes arising from a single criminal episode. Accordingly, consecutive habitual violent felony offender sentences may not be imposed on counts 13 and 20 on resentencing.
We AFFIRM the judgments of conviction in all cases on all counts; however, we REVERSE the consecutively imposed minimum mandatory sentences for counts 13 and 20, and REMAND for resentencing as to these counts.
WOLF and LAWRENCE, JJ., concur.
NOTES
[1] Sua sponte, this court has consolidated cases 91-2888 (Service Merchandise), 91-3143 (Scotty's), and 91-3144 (Sports Authority) for appellate review.
[2] Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86.
[3] Appellant's presentence investigation report indicates that appellant had been previously arrested and sentenced for attempted grand larceny, breaking and entering with intent to commit a misdemeanor, breaking and entering with intent to commit a felony, assault with intent to commit a robbery, armed robbery, petit theft, and resisting arrest without violence. As indicated above, appellant was sentenced as a habitual violent felony offender.
[4] See also, State v. Chorpenning, 294 So.2d 54 (Fla. 2d DCA 1974).
[5] In The King v. Warickshall, 168 Eng.Rep. 234, L.Leach Cr. Cases 263 (K.B. 1783), it was stated: "A free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, and therefore it is admitted as proof of the crime to which it refers; but a confession forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape when it is to be considered as the evidence of guilt, that no credit ought to be given to it; and therefore it is rejected."
[6] In Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941), Justice Roberts stated: "The aim of the rule that a confession is inadmissible unless it was voluntarily made is to exclude false evidence. Tests are invoked to determine that there is a fair risk the confession is false."
[7] See also, Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, and Ward v. Texas, 316 U.S. 547, 62 S.Ct. 1139, 86 L.Ed. 1663 (1942), and Chambers v. Florida, 309 U.S. 227, 236-37, 60 S.Ct. 472, 477, 84 L.Ed. 716 (1940). Chambers is noteworthy for this memorable passage: "The testimony of centuries, in governments of varying kinds over populations of different races and beliefs, stood as proof that physical and mental torture and coercion had brought about the tragically unjust sacrifices of some who were the noblest and most useful of their generations. The rack, the thumbscrew, the wheel, solitary confinement, protracted questioning and cross questioning, and other ingenious forms of entrapment of the helpless or unpopular had left their wake of mutilated bodies and shattered minds along the way to the cross, the guillotine, the stake and the hangman's noose. And they who have suffered most from secret and dictatorial proceedings have always been the poor, the ignorant, the numerically weak, the friendless, and the powerless."
[8] It is interesting to note that Brown concerned the due process violation committed when several suspects were beaten. The confessions were of doubtful reliability because of the beating, and thus, reliability became a due process as well as an evidentiary concern. See also Chambers v. Florida, supra, n. 7.
[9] Shotwell Manufacturing Co. v. U.S., 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963), is cited as authority for the above-quoted statement, but the statement actually dates back to 3 Russ. Crimes (6th Ed.) 478, quoted in Bram, 168 U.S. at 542-43, 18 S.Ct. at 187, 42 L.Ed. at 568.