983 So.2d 637 (2008)
Joyce MUNROE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1681.
District Court of Appeal of Florida, Fourth District.
May 14, 2008.
*639 Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
Joyce Munroe appeals her conviction and sentence for trafficking in over 400 grams of cocaine. We have reviewed the issues raised on appeal and write to address the prosecutor's comments regarding Munroe's failure to make an exculpatory statement when the police found cocaine in her bag. We conclude that those comments amount to unconstitutional comments upon her post-arrest silence; we therefore reverse and remand for a new trial.
On April 5, 2006, four detectives of the Broward County Sheriff's Office Drug Interdiction Unit were on duty in an undercover capacity at the Ft. Lauderdale Airport. Officer Macdonald observed the defendant, Munroe, disembark from a Spirit Airlines flight from Nassau, Bahamas. The passengers on the flight had cleared a U.S. Customs search prior to leaving the Bahamas. Munroe's behavior caught Macdonald's attention because she kept looking back at a male passenger who was following closely behind her. When the two passengers approached the escalators leading down to the baggage claim area, Munroe went to the left and the male subject went to the right; the two paused, and then Munroe exited four to five feet behind the male passenger out of the upper level arrival area. Macdonald followed Munroe, stopped her, showed her his badge and identified himself *640 as a police officer. According to Macdonald, Munroe was cooperative. She agreed to speak with him, showed him her passport, and consented to a search of her carry-on duffle bag. Macdonald testified that he found two bricks of what he believed to be cocaine in Munroe's bag, each weighing 1 kg, and he immediately handcuffed Munroe and took her to the police station. The street value of the cocaine is approximately $40,000.00.[1] Munroe had arrived in Ft. Lauderdale at 4:15 p.m. and had a return ticket leaving Ft. Lauderdale at 7:55 p.m. that same day. Munroe's bag contained some clothing but no toiletries.
In response to the prosecutor's inquiry about Munroe's demeanor when he discovered the cocaine, Macdonald testified that he "didn't see much of a reaction at all from [Munroe]." Macdonald testified that later, at the police station, Munroe stated that "she didn't put those things in the bag" and "you wouldn't find her fingerprints."
Munroe testified on her own behalf. On direct examination, defense counsel asked her about her reaction when Macdonald opened up her bag and discovered the bricks of cocaine. She answered, "I was stunned. I was like, what is this? I couldn't say nothing I was just shocked."
In his cross-examination of Munroe, the prosecutor addressed Munroe's silence at the time that Macdonald found the cocaine:
Q: Now, when you were out there on the curb. . . . You don't say, what the hell are those, do you?
A: When he opened my bag.
Q: You said that you never seen (sic) cocaine before, you were in shock?
A: I said it to myself of course.
Q: I am not interested in what you said to yourself. You didn't say it to two police officers that pulled it out of the bag? What is that? What do you have? What is going on? You don't say anything at the time. These are discovered and not a word?
A: I at the time I didn't but when I got in the police station I did.
Q: When they were first discovered, oh, my [god], there are two funny looking bricks.
[Defense Counsel]: Judge, I object to the dramatics.
[The Court]: Sustained.
Q: When they were first discovered in your luggage unbeknownst to you, you don't say anything at all? What are they?
At that point, the defense counsel moved for a mistrial on the ground that the prosecutor had improperly commented upon Munroe's post-arrest silence. Both sides debated the time-period in question. Defense counsel maintained that the prosecutor was referring to Munroe's post-arrest silence because Macdonald testified that he immediately handcuffed Munroe when he found the cocaine. The prosecutor maintained that his cross-examination of Munroe referred only to the period before Macdonald handcuffed her. Convinced that Munroe's silence prior to being handcuffed was not protected, the trial court denied the motion, ruling that the prosecutor was commenting upon Munroe's pre-arrest silence, also noting that the state's questioning was responsive to the direct examination.
After the trial court denied the motion for mistrial, the prosecutor resumed the same line of inquiry concerning Munroe's *641 silence: "[t]hat foreign substance that you saw, you were completely silent?" Again, the trial court overruled the defense's objection.
During closing argument, the prosecutor once again referred to Munroe's silence upon the discovery of cocaine in her bag:
[D]o you find it odd that the drug courier. . . .
[Defense objection to drug courier terminology]
The person possessing two kilograms and when they were first immediately discovered says nothing. [Defense objection]
And . . . 15 to 20 minutes later she says two things. I didn't put them in there. And you won't find my fingerprints on it.
We generally apply the abuse of discretion standard of review to a trial court's ruling on a motion for mistrial. Veltre v. State, 957 So.2d 47, 50 (Fla. 4th DCA), review denied, 973 So.2d 1125 (Fla. 2007). When the motion for mistrial is based upon a prosecutorial comment on the defendant's silence, we review under the harmless error test. Myles v. State, 967 So.2d 450, 453 (Fla. 4th DCA 2007). In other words, unless it is harmless error, a comment on a defendant's exercise of his or her right to remain silent is reversible error. Kiner v. State, 824 So.2d 271, 272 (Fla. 4th DCA 2002) (citing State v. DiGuilio, 491 So.2d 1129, 1136-37 (Fla. 1986)). "`Comments on silence are high risk errors because there is a substantial likelihood that meaningful comments will vitiate the right to a fair trial.'" Id. (quoting DiGuilio, 491 So.2d at 1136).
The due process clause of the Florida Constitution, Article I, Section 9 guards against prosecutorial comments on a defendant's post-arrest silence, regardless of whether Miranda warnings have yet been given.[2]State v. Hoggins, 718 So.2d 761, 770 (Fla.1998). A prosecutor's comment on a defendant's failure to offer an exculpatory statement prior to trial amounts to a comment upon the defendant's right to remain silent. Id. "`The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted.'" Id. at 772 (quoting United States v. Hale, 422 U.S. 171, 180, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975)). Therefore, "[e]vidence or argument that is fairly susceptible of being deemed a comment on the right of silence should be excluded." Giorgetti v. State, 821 So.2d 417, 422 (Fla. 4th DCA 2002) (citing State v. Smith, 573 So.2d 306, 317 (Fla.1990)), aff'd, 868 So.2d 512 (Fla.2004).
Under Florida caselaw, "post-arrest silence" is interpreted to broadly encompass the period "at the time of arrest." Hoggins, 718 So.2d at 767 (finding improper comments on "post-arrest silence" where prosecutor commented that defendant never told the police his exculpatory story when the police and the victim first confronted him in his apartment prior to his actual arrest). This court has treated a defendant's silence during the initial police contact with the defendant, prior to the actual arrest, as protected "post-arrest" silence. For example, in Mitchell v. *642 State, 911 So.2d 1278 (Fla. 4th DCA 2005), we held that a prosecutor's comments were improper comments on a defendant's post-arrest right of silence where the prosecutor argued, "[i]f you're innocent, you stand there, you tell the cop why you're innocent, you don't take off running." Id. at 1279 (citing Ruiz v. State, 378 So.2d 101, 102 (Fla. 3d DCA 1979)). Likewise, in Giorgetti, we held that the arresting officer's testimony that the defendant did not respond or object when the officer advised him that he was being arrested constituted improper post-arrest comments. 821 So.2d at 422. As we noted there, "[t]he cases generally condemn any attempt to establish that defendant did not protest his arrest by declaiming his innocence in some way when he was being arrested." Id. Accordingly, we hold that the prosecutor's comments concerning Munroe's silence after Officer Macdonald had stopped her and found cocaine in her bag, even if made prior to her actual arrest, are comments on her protected "post-arrest" silence.
We next consider whether the prosecutor's comments were an invited response to Munroe's testimony. A defendant who takes the stand does not waive her right to pretrial silence. Hoggins, 718 So.2d at 769. Nevertheless, if a defendant's pretrial silence is inconsistent with her exculpatory trial testimony, she may be impeached by her prior silence, to the extent that the probative value is not outweighed by the risk of unfair prejudice. Id. at 770-71; see also §§ 90.403, 90.608(1), Fla. Stat. (2007).
The state maintains that Munroe's testimony "opened the door" and invited the prosecutor's inquiry about her pretrial silence, since she testified on direct examination that she was silent when police discovered the cocaine and that the reason for her silence was that she was too shocked to speak. While we agree that her testimony invited a limited degree of inquiry responsive to her statement that she was too shocked to speak, the prosecutor's comments exceeded the scope of invited response when he suggested that instead of being too shocked to speak, she should have been shocked enough to affirmatively proclaim her innocence. In addition to the obvious risk of unfair prejudice, the questioning as to why Munroe did not proclaim her innocence lacked probative value. "[S]ilence is `considered evidence of acquiescence only if it would have been natural under the circumstances to object to the assertion in question.'" Hoggins, 718 So.2d at 771 (quoting Hale, 422 U.S. at 176, 95 S.Ct. 2133). In view of the various legitimate reasons for a suspect to remain silent at the time of arrest, "[t]he time of arrest is not an occasion when circumstances naturally call upon a defendant to speak out." Id.; but cf. Diaz v. State, 958 So.2d 377, 382 (Fla. 3d DCA) (holding that where defendant testified on direct that passenger forced him to drive robbery "getaway car" at gunpoint and the reason he did not include this in the statement he gave to police was because the passenger threatened to kill him if he did, defendant invited inquiry by the state regarding his failure to tell the whole story to police the first time), review denied, 968 So.2d 556 (Fla.2007).
Once the record establishes an erroneous prosecutorial comment on silence, the comment must further be evaluated under a harmless error analysis. Hoggins, 718 So.2d at 772 (citing State v. DiGuilio, 491 So.2d at 1130). The harmless error test places the burden on the state to prove that there is no reasonable possibility that the error affected the verdict. Id. "When the evidence against the defendant is not clearly conclusive, comment on postarrest silence is not harmless." Id.
The comments on Munroe's silence were not harmless. Whereas an inference of Munroe's guilty knowledge *643 arose from her exclusive possession of the cocaine, the inference was rebutted by evidence that Munroe successfully passed through U.S. customs at the Bahamas and drugs were not discovered, and also by the evidence that Munroe was traveling with a male acquaintance, who, as she postulated, might have put the cocaine in her bag. In addition, Munroe testified to her innocence. Therefore, there is a reasonable possibility that the improper prosecutorial comments on Munroe's silence influenced the jury verdict.
Reversed and Remanded.
TAYLOR, J., concurs.
STONE, J., dissents with opinion.
STONE, J., dissenting.
I would affirm. In my judgment, the facts of this case are distinguishable from those in State v. Hoggins, 718 So.2d 761 (Fla.1998), and Mitchell v. State, 911 So.2d 1278 (Fla. 4th DCA 2005). I would recognize that the inquiry and comment here relate to pre-arrest silence and are not fairly susceptible of interpretation as a comment on the exercise of Munroe's right to remain silent.
NOTES
[1] For the record, the trial court described each brick to be approximately the size of a milk container.
[2] By contrast, under the United States Constitution, it is permissible for the prosecutor to comment upon a defendant's silence during the entire period before Miranda warnings are given, even post-arrest. See Hoggins, 718 So.2d at 766 (citing Fletcher v. Weir, 455 U.S. 603, 606, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), and Jenkins v. Anderson, 447 U.S. 231, 240, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980)). Individual states are free to determine whether their own laws and constitutions permit a prosecutor to comment on pre-Miranda silence. Id.