# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-5213
_____

ANTHONY LAMAR SIMMONS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Angela M. Cox, Judge.


October 15, 2018


B.L. THOMAS, C.J.

Appellant was convicted and sentenced on two counts of attempted second-degree murder and four counts of attempted armed robbery. Appellant challenges evidentiary rulings allowing deposition testimony to be admitted at a pretrial similar-fact hearing and admitting related evidence at trial. Appellant argues that these two rulings, together with improper prosecutorial comments, require reversal and a new trial.

*Facts and Trial Proceedings*

Six people went out to a restaurant to sing karaoke and celebrate a birthday. After the restaurant closed, they remained outside for an hour or longer, talking and laughing about the weekend.

Appellant, identified in court by four witnesses, approached the restaurant and checked the door to see if the business was closed. Appellant then walked a few feet toward the group, told them his car was out of gas, and asked for money to help. One member of the group immediately offered to take care of the car for Appellant. Declining that assistance, Appellant accepted $2.00 from another person and walked away a few feet, but then turned to the group again, his hand fumbling in his pocket, and irately asked why the victims had given him so little money. Appellant pulled out a handgun and told the group he would shoot anyone who attempted to leave, and demanded their wallets and money.

One member of the group stood up and stepped toward Appellant, and Appellant immediately shot the victim in the chest. The bullet entered the victim's lower torso, exited, and then entered the second victim's face. The first victim testified that he tried to run after Appellant but found that he couldn't breathe, and looked at his chest to find a hole in his body. The second victim testified that his face started shaking and his body "slumped" to the left, and he could not move. The bullet lodged permanently in that victim's neck.

Appellant's girlfriend testified that Appellant, whom she met on Facebook, was known as "Amp." When a local televised news report posted pictures of the suspect from restaurant surveillance video, Appellant admitted to her that the picture depicted him.

The State introduced a photograph of Appellant with a handgun, which was posted to Facebook near the date of the crimes and matched the victims' descriptions of the perpetrator. The State noted that the gun in the photograph was consistent with the .40-caliber Smith & Wesson semi-automatic pistol seized from the apartment Appellant shared with his girlfriend. The

2

State presented evidence that Appellant's DNA was found on the magazine of that firearm.

After law enforcement obtained sufficient evidence to secure an arrest warrant, several officers attempted to arrest Appellant as he arrived at his girlfriend's apartment. The officers used three cars to attempt to block the egress route of the car in which Appellant arrived. Appellant jumped into the driver's seat and drove into a parked car and then directly into an officer's car, and continued until he reached a dead end. Appellant then drove into a dumpster, and one officer rammed his car. Appellant leapt out of the car and was hit by another vehicle, but quickly jumped up and attempted to run away. Appellant was then tackled by several officers and arrested.

The State presented the similar-fact testimony of a witness who was robbed by Appellant two nights earlier, at a restaurant less than a mile away from the location of the charged crimes. The trial court informed the jury of the limited purpose of the evidence, noting that "the defendant cannot be convicted for a crime, wrong or act that is not included in the Information."

The similar-fact witness testified that she and friends arrived at the restaurant near 2:45 a.m. She did not know Appellant, who was standing outside the restaurant, but she asked him to use her phone to take a picture of her and two friends. The witness and her friends then went into the restaurant. When the witness left the restaurant alone 15 minutes later, Appellant approached her and asked for a cigarette lighter. She went to her car and looked for a lighter, then turned to tell Appellant she did not have one, and saw that Appellant was pointing a handgun at her. Appellant demanded her clothing, which contained her wallet and cell phone, and then returned her driver's license after wiping it off with his shirt. The witness testified that she drove home in her undergarments. The witness further testified that Appellant had on a white tank-top, which was a similar shirt to the one described by the witnesses to the charged crime. The witness also testified that Appellant was in a car similar to the car shown in the surveillance video on the televised news report. Shortly after the

robbery, the witness identified Appellant from a photographic line-up, and she positively identified him at trial.

Appellant testified in his own defense, stating that on the night of the charged crimes he told the victims he needed money for gas, and they gave him money in exchange for marijuana. After noticing he had been short-changed, he returned to them, when the first shooting victim pulled a knife and threatened Appellant, and then chased him. Appellant testified that he fell and got back up, but his pants were baggy and needed to be pulled up; while he was pulling up his pants, his gun went off accidently. He further testified that he fled the attempted arrest because he thought he was being assaulted, as the officers were in unmarked cars. Appellant denied any involvement in the prior robbery.

After the defense rested, the State called the victims of the charged case, who testified on rebuttal that they never bought drugs from Appellant and no one attacked Appellant with a knife. The State also called the arresting officer, who testified that Appellant, after being read his rights, told police he did not own a gun and he was never at the restaurant that night.

During closing argument, the State told the jury that Appellant's story about being attacked by the victim was "made up – made up for the first time three years and one month later." Defense counsel objected, which was overruled. The State made several similar remarks attacking Appellant's credibility and veracity. Defense counsel did not object to these statements. The State also argued that the discharge of the firearm "doesn't have to be accidental, it doesn't have to be intentional, it's the fact that [Appellant] was the person with the firearm, he is the one that discharged it."

Appellant was found guilty on all counts. At sentencing, the victim who had been shot in the face testified to the pain and suffering he continued to endure, urging the court to sentence Appellant to life imprisonment. Another victim testified to the extreme mental anguish she experienced after the crime. The court sentenced Appellant to forty years in prison on one count of attempted second-degree murder and twenty-five concurrent

4

years in prison on all other counts, based on a jury finding that Appellant discharged a firearm during the offenses causing great bodily harm.

*Analysis*

*I.  Use of Deposition Testimony at Similar-Fact Pretrial Hearing*

Appellant argues that the trial court committed reversible error in allowing the State to proffer deposition transcripts from the charged offense in the pretrial similar-fact hearing. Appellant argues that the deposition testimony used at the pretrial hearing was hearsay, and therefore this Court should reverse and remand for a new trial.

The relevant statutory law requires no proffer of the evidence of the *charged crimes* during a pretrial review of similar-fact evidence:

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

§ 90.404(2)(a), Fla. Stat. (2016).

Before introducing evidence of collateral crimes, the State "shall furnish to the defendant . . . a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information . . . ." § 90.404(2)(d)1, Fla. Stat. (2016). The supreme court has held that, "before even considering whether to allow evidence of prior acts to be presented to the jury, the trial court must find that the *prior acts* were proved by clear and convincing evidence." *McLean v. State*, 934 So. 2d 1248, 1262 (Fla. 2006) (emphasis added); *Barber v. State,* 781 So. 2d 425, 428-29 (Fla. 5th DCA 2001) ("[t]he State is only required to give notice of its intent to

5

rely on *Williams*[*] rule evidence pursuant to section 90.404(2)(b), Florida Statutes (1997).").

After considering arguments and case law during the pretrial hearing, the trial court here ruled that the State could use the depositions of the witnesses to the charged offense at the pretrial hearing to serve as a comparison to the similar-fact evidence. In pretrial hearings, hearsay evidence is generally admissible. *See, e.g., Bauer v. State,* 528 So. 2d 6, 10 (Fla. 2d DCA 1988) ("hearsay evidence is admissible at such a pretrial hearing"); *Lara v. State*, 464 So. 2d 1173, 1177 (Fla. 1985) (finding that hearsay evidence "was properly admitted at the suppression hearing, even though [a witness] was unavailable for cross-examination"). In addition, the State's notice of its intent to use similar-fact evidence was specific and adequate, referring to both the case number of the similar-fact robbery and the name of that robbery victim.

After the depositions from the charged crime were entered into evidence, the State called a deputy sheriff and the victim of the similar-fact robbery. Defense counsel cross examined these witnesses. The trial court then heard arguments as to whether the collateral crime was similar enough to the charged offense (as described in the depositions) to be admissible at trial. The trial court found that the evidence of the collateral robbery was admissible. Thus, because the State gave sufficient notice of the similar-fact evidence, and the hearsay evidence was admissible in the pretrial *Williams* rule hearing, and testimony from the similar-fact witness was subject to cross examination, the trial court did not err in allowing the State to use the deposition testimony at the hearing. *See Barber,* 781 So. 2d at 427.

Were we to hold otherwise, each victim in the charged offenses would be required to appear and testify *three times* – once at a pretrial deposition, again at the pretrial similar-fact hearing, and finally at trial. Such is not required under either the statute or the relevant case law. The collateral-crime witnesses testified at the pretrial hearing and were cross

---

[*] *Williams v. State,* 110 So. 2d 654 (Fla. 1959).

6

examined by defense counsel on how these incidents compared to what was known of the charged offenses. Furthermore, the witnesses to the charged offense were cross examined at their depositions and at trial. In addition, the trial court continued to assess the admissibility of the similar-fact evidence at trial, asking if defense counsel had "any rebuttal as it relates to that argument about additional crimes." Thus, Appellant was not prejudiced by the trial court's decision to allow the use of deposition testimony during the pretrial hearing.

## II. *Admission of Similar-Fact Evidence at Trial*

A trial court's decision to admit similar-fact evidence is reviewed for abuse of discretion. *Black v. State*, 630 So. 2d 609, 618 (Fla. 1st DCA 1993). "[C]ollateral crime evidence is not required to be so unique that no other perpetrator could have committed both offenses. Rather, the two crimes must share some unique features suggesting the same perpetrator." *Id.* at 617-18. In *Black*, this Court found that the following facts were sufficiently similar as to render the *Williams* rule evidence admissible:

> All robberies occurred at the end of weekend business; at gunpoint, the robber ordered all store employees into a confined area, and they were told not to come out for ten minutes; the robber disabled the store phones in each instance; the robber carried a large, dark, semiautomatic handgun in each instance; and in each instance, the perpetrator was a tall, bulky black man wearing a plaid flannel shirt, a dark ski mask and gloves.

*Id.* at 617.

Appellant argues that the collateral armed robbery was not sufficiently similar to the charged crime as to render the evidence admissible. The trial court found that both robberies occurred on 103rd Street in Jacksonville; both crimes happened outside of chain restaurants; both crimes were committed in the early-morning hours, within two days of each other; both crimes were committed by similarly described lone gunmen wearing white

7

tank tops; and both crimes were committed against strangers. The trial court then explained that the "signature feature" shared by each instance was that the perpetrator struck up a friendly conversation with strangers and made innocent requests, then returned with a gun to make demands. The trial court found it "unusual in robberies for there to be an innocent encounter and a request for something seemingly innocent prior to a robbery."

We agree with the trial court that there were sufficient similarities and "significant feature[s]" between the collateral and the charged robberies. Although there may have been insignificant differences between the robberies, "[d]issimilarities are not fatal when they 'seem to be a result of differences in the opportunities with which [the defendant] was presented, rather than differences in modus operandi.'" *Durousseau v. State*, 55 So. 3d 543, 553 (Fla. 2010) (quoting *Gore v. State*, 599 So. 2d 978, 984 (Fla. 1992)). Thus, while it is correct that a trial court must evaluate both similarities and differences, it is the entire picture of the criminal episodes which a court must view, not simply differences in isolation. By definition, no two criminal episodes are identical.

Based on the similarities and unusual modus operandi noted by the trial court, plus other similarities, the trial court did not abuse its discretion in admitting the similar-fact evidence. *See State v. Norris*, 168 So. 2d 541, 543 (Fla. 1964). As in *Black*, where similar modus operandi, clothing, description, and location established a logical connection, here the State showed "similarity and an unusual nature of the factual circumstances." 630 So. 2d at 617. We therefore reject Appellant's arguments on this issue.

### III. *Improper Prosecutorial Arguments*

If a defendant does not contemporaneously object to an improper comment made in closing argument, he waives the claim on appeal. *Randolph v. State,* 853 So. 2d 1051, 1068 (Fla. 2003); *see also Wasko v. State,* 505 So. 2d 1314, 1317 (Fla. 1987) (finding that a trial court's ruling on such an objection is reviewed for abuse of discretion). Likewise, if a defendant does object to an improper comment, but does not move for mistrial

8

before the jury retires for deliberation, he waives the claim on appeal. *State v. Cumbie*, 380 So. 2d 1031, 1033 (Fla. 1980). When a criminal defendant fails to object to an allegedly improper prosecutorial argument, an appellate court may not reverse a conviction on that basis, unless the prosecutorial comment constitutes fundamental error, although the reviewing court may find the cumulative effect of improper comments to be so prejudicial as to deprive a defendant of a fair trial, requiring reversal. *See Lukehart v. State*, 70 So. 3d 503, 524 (Fla. 2011). Of course, where all individual claims of prosecutorial misconduct are meritless, a cumulative error claim necessarily fails. *Id.*

Here, Appellant alleges that the State: 1) improperly argued that Appellant lied on the stand; 2) misstated the law by telling the jury it could convict if Appellant accidentally discharged his firearm; 3) improperly shifted the burden of proof for self-defense; and 4) improperly commented on Appellant's right to remain silent. Appellant asserts that the cumulative effect of these comments warrants reversal.

It is improper for a prosecutor to opine that a defendant lied on the stand, unless the comments were "made in fair reference to the evidence." *Blackwood v. State*, 946 So. 2d 960, 970 (Fla. 2006); *see also Lugo v. State,* 845 So. 2d 74, 107-08 (Fla. 2003) (holding that where the evidence substantially proved the defendant was deceitful, remarks challenging the veracity of the defendant were proper comments on the evidence). "It is only when, viewed in the totality of the case, the prosecutor's comments drift far afield from the evidence adduced at trial that they may constitute fundamental error." *Zack v. State,* 911 So. 2d 1190, 1205 (Fla. 2005). Appellant cannot prevail in his argument for reversal, unless the combined remarks were so prejudicial as to deny him a fair trial. *See Lukehart*, 70 So. 3d at 524; *Cumbie*, 380 So. 2d at 1033.

We hold that the State's comments were a fair reference to the evidence, and were not so far afield from the evidence adduced at trial as to constitute fundamental error. The State introduced evidence tending to show that Appellant gave a false statement to police by claiming that he was never at the scene and did not own a firearm. The State also presented evidence

that Appellant committed the collateral robbery, including the collateral-crime victim's identification of Appellant. The collateral-crime evidence showed that Appellant had a modus operandi for robberies, contradicting his testimony that he was an innocent victim ambushed by the victims of the charged offenses. Likewise, Appellant's statements to police discredited his trial testimony.

Appellant also argues that, during closing argument, the State misstated the law by incorrectly informing the jury that Appellant could be convicted even if the jury believed the discharge of the firearm was an accident. Where a prosecutor misstates the law during closing argument, and the defendant does not object or move for mistrial, the issue is not preserved for appellate review unless the comment rises to fundamental error, such that a conviction could not have been obtained without the error. *See, e.g., Evans v. State*, 177 So. 3d 1219, 1234 (Fla. 2015); *State v. Fountain*, 930 So. 2d 865, 866 (Fla. 2d DCA 2006).

During closing arguments, the State told the jury that the discharge of the firearm "doesn't have to be intentional, it's the fact that [Appellant] was the person with the firearm, he is the one that discharged it." Appellant neither objected nor moved for mistrial; thus, absent fundamental error, the issue is waived. *Evans*, 177 So. 3d at 1234. Regardless, we do not view the State's comment as a misstatement of law, let alone fundamental error. The State argued that intent was not required for the *aggravating factor* of discharging a firearm. The State had already explained how to find second-degree murder, and prefaced the challenged comment with "So, *if* you find [Appellant attempted to] commit[] murder in the second degree . . . ." (Emphasis added.) Thus, no fundamental error occurred.

Next, Appellant claims that the State improperly shifted the burden of proof on his self-defense claim. When a defendant raises a self-defense claim, he must produce enough evidence to establish a prima facie case of justifiable use of force. *Fields v. State*, 988 So. 2d 1185, 1188 (Fla. 5th DCA 2008). Once a defendant makes this showing, the State has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. *Id.* Where a defendant does not object to a comment

that shifts the burden of proof, the claim is waived on appeal. *Morrison v. State,* 818 So. 2d 432, 445 (Fla. 2002).

Here, the State told the jury that "in order to find a justifiable attempted homicide, you all would have to believe unanimously that [Appellant] was the one being attacked by [the victim] with that pocketknife in order to find that [Appellant's] actions, the firing of the gun, was justifiable." As Appellant did not object or move for mistrial, this claim is not preserved for appeal. *See id.* Moreover, this comment did not shift the burden of proof. *See Fields*, 988 So. 2d at 1188. Shortly after making the comment, the State told the jury that if, "in your consideration of the issue of self-defense, you have reasonable doubt on the question of whether [Appellant] was justified in the use of deadly force, you should find [Appellant] *not guilty*." (Emphasis added.) Thus, Appellant fails to show any fundamental error.

Appellant next argues that "[a] prosecutor's comments on a defendant's failure to offer an exculpatory statement prior to trial amounts to a comment upon the defendant's right to remain silent." *Munroe v. State,* 983 So. 2d 637, 641 (Fla. 4th DCA 2008) (citing *State v. Hoggins*, 718 So. 2d 761, 772 (Fla. 1998)). A comment on a defendant's right to remain silent is not fundamental error, and a contemporaneous objection is required to preserve for appeal any claim asserting that the State violated the defendant's constitutional right to remain silent. *Clark v. State*, 363 So. 2d 331, 333 (Fla. 1978), overruled in part on other grounds, *State v. DiGuilio*, 491 So. 2d 1129, 1137 n.14 (Fla. 1986).

Appellant waived this argument by not objecting to the comments at trial. *Clark*, 363 So. 2d at 333. In addition, the record shows that, after being read his rights, Appellant voluntarily gave a statement to law enforcement indicating that he was never at the crime scene and did not own a firearm. After Appellant testified at trial that he *was* at the scene and *did* shoot a firearm in self-defense, the State called the arresting officer on rebuttal and asked, "at any point in time did [Appellant] tell you that he shot in the direction of [the two shooting victims] in self-defense?" The officer answered, "No, ma'am, he said he wasn't even there." In closing, the State argued that Appellant's trial testimony was inconsistent with the statement he gave to police.

11

Because Appellant did offer an exculpatory statement prior to trial, the State did not comment on his silence. Appellant's reliance on *Munroe* is misplaced, as that case does not stand for the proposition that the Fifth Amendment allows defendants to testify at trial and change their previous explanations with no risk of impeachment. *See Munroe*, 983 So. 2d at 641. Thus we hold that none of the prosecutorial arguments entitle Appellant to a new trial.

AFFIRMED.

OSTERHAUS and BILBREY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, Victor D. Holder, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Sharon S. Traxler, Assistant Attorney General, Tallahassee, for Appellee.