PER CURIAM.
 

 Andrew Richard Lukehart appeals an order of the circuit court denying his amended motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Through his postconviction motion, Lukehart challenges his conviction of first-degree murder and sentence of death. Lukehart also petitions this Court for a writ of habeas corpus. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), (9), Fla. Const. With the single exception noted in the fourth issue below concerning a procedural claim, we affirm the postconviction court’s denial of rule 3.850 relief and we deny habeas relief.
 

 FACTS AND PROCEDURAL HISTORY
 

 Lukehart appeals the postconviction court’s denial, after evidentiary hearing, of his rule 3.850 motion for postconviction relief. The facts underlying the crime are set forth in this Court’s opinion on direct appeal:
 

 The victim in this case, five-month-old Gabrielle Hanshaw, was killed by Luke-hart, who lived in Jacksonville with Gabrielle’s mother, Misty Rhue, along with Rhue’s other daughter, Ashley, and Rhue’s father and uncle. On February 25, 1996, Lukehart and Rhue spent Sunday afternoon running errands in Rhue’s car with the two children. When the four returned to their house on Epson Lane, Rhue took two-year-old Ashley, who had been ill, to her bedroom for a nap, and Lukehart cared for Gabrielle, the baby, in another room. At one point, Lukehart entered the bedroom and took a clean diaper for the baby. At approximately 5 p.m., Rhue heard her car starting in the driveway, looked out the window, and saw Lukehart driving away in her white Oldsmobile. Rhue searched the house for the baby and did not find her. Thirty minutes later, Lukehart called from a convenience store and told Rhue to call the 911 emergency number because someone in a blue Chevrolet Blazer had kidnapped the baby from the house. After Rhue called 911, Jacksonville Sheriffs Detectives Tim Reddish and Phil Kearney went to the Epson Lane house.
 

 Shortly thereafter, Lukehart appeared without shirt or shoes in the front yard of the residence of a Florida Highway Patrol trooper in rural Clay County. At about that same time, the car that Lukehart had been driving was discovered about a block away from the trooper’s house. The car was off the road and had been abandoned with its
 
 *509
 
 engine running. Law enforcement officers from the Clay County Sheriffs Office and the Jacksonville Sheriffs Office interviewed Lukehart and searched in Clay County for the baby during the ensuing eighteen hours. At about noon on Monday, February 26, Lukehart told a lieutenant with the Clay County Sheriffs Office that he had dropped the baby on her head and then shook the baby and that the baby had died at Misty Rhue’s residence. Lukehart said that when the baby died, he panicked, left Rhue’s residence, and threw the baby in a pond near Normandy Boulevard in Jacksonville. Law enforcement officers searched that area and found the baby’s body in a pond.
 

 On March 7, 1996, Lukehart was indicted on one count of first-degree murder and one count of aggravated child abuse. The trial was held February 26 and February 27, 1997. During the trial, the State put into evidence the testimony of law enforcement officers who were involved in the search for the baby and who were with Lukehart during the evening of February 25 through the morning of February 26, 1996. The State also presented statements made by Lukehart. The State presented the testimony of the medical examiner, who testified that the baby’s body revealed bruises on her head and arm that occurred close to the time of death and that prior to death the baby had received five blows to her head, two of which created fractures.
 

 Lukehart chose to testify in his defense at trial. Before Lukehart testified, the trial court appropriately advised him that he had a right not to testify and that if he did testify, he would be subject to cross-examination. In his testimony, Lukehart said that, while he was changing the baby’s diaper on the floor at Rhue’s residence, the baby repeatedly pushed up on her elbows. He forcefully and repeatedly pushed her head and neck onto the floor “until the last time I did it she just stopped moving, she was just completely still.” Lukehart testified to being six-feet one-inch tall and weighing 225 pounds. He stated that he used “quite a bit” of force to push the baby down. He testified that he tried mouth-to-mouth resuscitation, and when the baby did not revive, he panicked and grabbed the baby and drove to a rural area. He said that when he stopped and was in the process of getting out of the car, he accidentally hit the baby’s head on the car door. Lukehart testified that he threw the baby into the pond where her body was found. He admitted that he had not told law enforcement officers the truth in his earlier accounts of the incident and that, although he did not intend to kill the baby, he was responsible for her death. He said that he eventually told Lieutenant Jimm Redmond of the Clay County Sheriffs Office that he was responsible for the baby’s death and that he had revealed the location of the baby’s body because “I felt bad, I felt guilty.”
 

 The jury convicted Lukehart of first-degree murder and aggravated child abuse as charged. At the penalty phase, the State established that Lukehart had pleaded guilty to felony child abuse for injuring his former girlfriend’s baby and that Lukehart was on probation for that prior felony conviction. By a vote of nine to three, the jury recommended death. In its sentencing order, the trial court found that the following three statutory aggravators had been established: (1) that the murder was committed during commission of the felony of aggravated child abuse; (2) that the victim was under twelve years of age; and (8)
 
 *510
 
 that appellant had a prior violent felony conviction and was on felony probation (two factors merged). The trial court also found and gave some weight to the statutory mitigators of Lukehart’s age (twenty-two) and his substantially impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The court found and gave some weight to the following nonstatutory mitigators: Lukehart’s alcoholic and abusive father; Lukehart’s drug and alcohol abuse; Lukehart’s being sexually abused and suicidal as a child; and Lukehart’s being employed. Finding that aggravators outweighed mitigators, the court sentenced Lukehart to death for the first-degree murder conviction and to fifteen years’ imprisonment for the aggravated child abuse conviction.
 

 Lukehart v. State,
 
 776 So.2d 906, 910-11 (Fla.2000). On direct appeal, Lukehart raised twelve claims.
 
 [1]
 

 Id.
 
 at 911 n. 1. This Court affirmed Lukehart’s convictions and his sentence of death and remanded the case to the trial court for a resentencing on the aggravated child abuse conviction and directed the trial court to complete the sentencing guidelines scoresheet because the trial court had failed to complete the required guidelines scoresheet in imposing Lukehart’s concurrent fifteen-year prison sentence on the aggravated child abuse conviction.
 
 Id.
 
 at 927.
 

 Lukehart sought certiorari review before the United States Supreme Court alleging that he was in custody for purposes of
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when he was handcuffed by Trooper Richard E. Davis, handcuffed by Deputy Jeff Gardner, and detained under the Baker Act.
 
 [2]
 
 On June 25, 2001, the United States Supreme Court denied certiorari.
 
 Lukehart v. Florida,
 
 533 U.S. 934, 121 S.Ct. 2561, 150 L.Ed.2d 726 (2001).
 

 On September 27, 2001, Lukehart filed a shell motion for postconviction relief. The trial court granted the State’s motion to strike the shell motion as improper.
 

 On June 20, 2002, Lukehart filed a motion to vacate judgment of conviction and sentence pursuant to rules 3.850 and 3.851. In his motion, Lukehart raised seventeen claims.
 
 [3]
 
 On August 26, 2002, the State
 
 *511
 
 filed a response to Lukehart’s motion for postconviction relief. There, the State did not oppose an evidentiary hearing on the third claim regarding Lukehart’s numerous ineffective assistance of counsel claims. On July 2, 2003, the trial court issued an order setting a
 
 Huff
 

 [4]
 

 hearing for September 22, 2003.
 

 Following the
 
 Huff
 
 hearing, the postcon-viction court granted an evidentiary hearing on Lukehart’s third claim only, regarding the alleged ineffectiveness of counsel during the guilt and penalty phases. The evidentiary hearing was conducted on May 9-10, 2007. During the evidentiary hearing, Lukehart called the following witnesses: (1) Dr. Barry M. Crown, (2) Dr. Jack Daniel, (3) Deputy Richard G. Davis, (4) Michael L. Edwards, (5) Amy Grass-Gilmore, (6) Deputy Jeff Gardner, (7) Brenda Page (Page), (8) Stephanie Repko (Repko), (9) Melissa Smith, (10) Bonnie Lukehart, (11) Randall Lukehart, and (12) Andrew Lukehart. The State did not call any witnesses.
 

 On March 27, 2009, following the eviden-tiary hearing for Lukehart’s third claim, the postconviction court entered its order denying Lukehart’s third claim and summarily denying the remaining sixteen claims. This appeal followed. On appeal, Lukehart raises twelve
 
 [5]
 
 claims in his ap
 
 *512
 
 peal from the denial of his rule 3.850 motion and also raises three
 
 [6]
 
 claims in his petition for writ of habeas corpus.
 

 ANALYSIS
 

 LUKEHART’S RULE 3.850 CLAIMS
 

 Ineffective Assistance of Counsel
 

 Lukehart contends that the post-conviction court erred in denying his claims that trial counsel was ineffective. Following the United States Supreme Court’s decision in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
 

 First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
 

 Maxwell v. Wainwright,
 
 490 So.2d 927, 932 (Fla.1986) (citations omitted). “Where this Court has previously rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a meritless argument.”
 
 Schoenwetter v. State,
 
 46 So.3d 535, 546 (Fla.2010).
 

 Standard of Review
 

 Because both prongs of the
 
 Strickland
 
 test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo.
 
 See Sochor v. State,
 
 883 So.2d 766, 771-72 (Fla.2004).
 

 There is a strong presumption that trial counsel’s performance was not ineffective.
 
 See Strickland,
 
 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.”
 
 Id.
 
 at 689, 104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ”
 
 Id.
 
 (quoting
 
 Michel v. Louisiana,
 
 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). “Judicial scrutiny of counsel’s performance must be highly deferential.”
 
 Id.
 
 at 689, 104 S.Ct. 2052. We have held that “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.”
 
 Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000).
 

 
 *513
 
 The Prior Violent Felony Aggravator
 

 In his first claim, Lukehart contends the postconviction court erred in denying this claim because trial counsel rendered ineffective assistance of counsel for failing to present the testimony of Page during the penalty phase trial because her testimony would have mitigated Luke-hart’s prior violent felony aggravator. Lukehart also contends that trial counsel rendered ineffective assistance of counsel for failing to file a rule 3.850 motion to have the prior violent felony vacated or set aside. We disagree.
 

 Lukehart has failed to demonstrate that trial counsel’s performance was deficient. At the evidentiary hearing, trial counsel testified that he discussed the prior conviction with Lukehart and was aware that Lukehart denied committing that crime. Trial counsel discussed the prior conviction with the attorney who handled that case, who informed trial counsel that she had told Lukehart that he had a good chance of acquittal and advised him not to enter a plea. Trial counsel also obtained and read the Public Defender’s file in the prior conviction case, including the psychological report and the lawyer’s notes. After reviewing the file regarding the prior conviction and discussing the case with the assistant public defender who handled the case, trial counsel concluded that Lukehart’s plea had been knowingly, voluntarily, and intelligently entered. Trial counsel testified that there was no basis to set aside the plea and noted that he had an ethical obligation not to file frivolous motions.
 

 Moreover, to the extent that Luke-hart is really raising a residual or lingering doubt claim, Florida does not recognize residual doubt, much less residual doubt as to the aggravators.
 
 See Williamson v. State,
 
 961 So.2d 229, 237 (Fla.2007). Counsel cannot be deemed ineffective for failing to pursue a meritless claim.
 
 Ferrell v. State,
 
 29 So.3d 959, 975 (Fla.2010) (citing
 
 Mungin v. State,
 
 932 So.2d 986, 997 (Fla.2006)).
 

 Additionally, it appears that Lukehart is also asserting that trial counsel was ineffective for failing to raise a
 
 Johnson
 

 [7]
 

 claim. Because Lukehart’s prior violent felony conviction for child abuse has not been vacated and is still a valid conviction, this is not a cognizable claim. Again, counsel cannot be deemed ineffective for failing to pursue a meritless claim.
 
 Ferrell,
 
 29 So.3d at 976 (citing
 
 Mungin,
 
 932 So.2d at 997).
 

 To the extent that Lukehart argues that counsel was ineffective for failing to mitigate the prior violent felony aggra-vator during the penalty phase, Lukehart’s claim is without merit. As explained above, trial counsel conducted a reasonable investigation into the prior violent felony aggravator. Trial counsel chose not to introduce the testimony that was revealed during the evidentiary hearing because it would have opened the door and permitted the prosecution to show that Lukehart admitted to the crime and severely injured another infant on a separate occasion. “Trial counsel is not deficient for failing to present additional testimony that would have informed the jury of negative information about the defendant.”
 
 Windom v. State,
 
 886 So.2d 915, 923 (Fla.2004) (citing
 
 Breedlove v. State,
 
 692 So.2d 874, 878 (Fla.1997)). Additionally, trial counsel will not be found to have rendered deficient performance when trial counsel made a reasonable, strategic decision to not present mitigation testimony during the penalty
 
 *514
 
 phase that could open the door to other damaging testimony.
 
 See Davis v. State,
 
 990 So.2d 459, 472 (Fla.2008) (quoting
 
 Gaskin v. State,
 
 822 So.2d 1243, 1248 (Fla.2002)).
 

 A comparison of Page’s 1994 deposition and her subsequent evidentiary hearing testimony does not reveal the existence of any evidence that would have mitigated the weight of Lukehart’s prior violent felony aggravator. Rather, it appears that Lukehart wanted to use Page’s testimony to relitigate the merits of his 1994 conviction. We have previously rejected a similar claim.
 
 See Melton v. State,
 
 949 So.2d 994, 1005 (Fla.2007) (“Melton may not re-litigate the Saylor murder conviction in these proceedings.”).
 

 Further, Lukehart cannot demonstrate prejudice. Prejudice, in the context of penalty phase error, is shown where, absent the error, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different or the deficiency substantially impaired or undermined confidence in the outcome of the proceeding.
 
 See Smithers v. State,
 
 18 So.3d 460, 467 (Fla. 2009) (citing
 
 Jones v. State,
 
 998 So.2d 573, 585 (Fla.2008)). In the instant case, Luke-hart has failed to demonstrate any error in trial counsel’s handling of the prior violent felony conviction that would undermine confidence in the outcome. Notwithstanding Page’s testimony at the evidentiary hearing, Lukehart has not provided a reasonable explanation for his decision to plead guilty to the prior child abuse charge. Moreover, J.F., the victim of Lukehart’s prior child abuse charge, was in the exclusive care of Lukehart at the time she sustained her head injuries. Instead, the introduction of Page’s testimony would likely have caused the jury to conclude that Lukehart had a propensity for harming infants.
 

 Motion to Amend
 

 In his second claim, Lukehart contends that the postconviction court erred in denying his motion to amend the pleadings to conform with the evidence. There, Luke-hart alleged that trial counsel was ineffective for failing to file a motion to cease Lukehart’s medication and a motion for a continuance. Lukehart contends that the trial court erred in denying his motion because information that serves as a basis for this claim did not surface until the evidentiary hearing. We disagree.
 

 “The standard of review for a trial court’s determination regarding a motion to amend a rule 3.850 motion is whether there was an abuse of discretion.”
 
 Huff v. State,
 
 762 So.2d 476, 481 (Fla.2000) (citing
 
 McConn v. State,
 
 708 So.2d 308, 310 (Fla. 2d DCA 1998)). Because Lukehart’s motion for postconviction relief is governed by rule 3.850, we review the postconviction court’s denial of Lukehart’s motion to amend for an abuse of discretion.
 

 Pursuant to rule 3.850(f), evidence revealed after the conclusion of an eviden-tiary hearing is proper in a successive motion for postconviction relief, not in a motion to amend the initial motion for postconviction relief. In his 2007 motion, Lukehart requested that claim three in his motion for postconviction relief be amended to include the additional subclaims that defense counsel was ineffective for failing to (1) inform the trial court prior to trial that Lukehart was under the influence of prescribed medication, which altered his ability to remember accurately, (2) request that Lukehart’s medication be withheld, and (3) request a continuance until such time as the effects of the medication wore off. Lukehart did not raise this claim in his initial or amended rule 3.850 motions. Rather, Lukehart raised this claim in his
 
 *515
 
 motion to amend the pleadings to conform with the evidence, filed on June 1, 2007. In its order denying relief, the postconviction court acknowledged the existence of Lukehart’s motion to amend the pleadings to conform with the evidence, but did not discuss the substance of the motion. This claim may be properly raised in a successive motion for postconviction relief. Thus, we conclude that the postconviction court did not abuse its discretion in denying this claim.
 

 Failure to Call Dr. Krop
 

 In his third claim, Lukehart contends that the postconviction court erred in finding that trial counsel was not ineffective for failing to present the testimony of Dr. Krop during Lukehart’s guilt phase trial. We disagree.
 

 At the evidentiary hearing, trial counsel testified that he presented Dr. Krop during the penalty phase, but that he did not present this testimony during the guilt phase. Trial counsel explained that the prosecutor in this case had a policy not to depose mental health experts who testified in the penalty phase; she just read the expert’s reports. However, trial counsel testified that if he had listed Dr. Krop as a guilt phase witness, the prosecutor would have deposed him. Trial counsel testified that he was afraid this would open the door to Lukehart’s conduct after killing the infant and stated that he and Dr. Krop were concerned about revealing Lukehart’s conduct to the jury because his conduct was the most emotional and extreme at that point. To avoid revealing damaging information through Dr. Krop’s testimony, trial counsel testified that he had to walk on eggshells during his examination of Dr. Krop at the penalty phase. After the evidentiary hearing, the postcon-viction court denied Lukehart’s ineffective assistance of counsel claim regarding the failure to present Dr. Krop during the guilt phase trial, finding that defense counsel’s decision constituted a reasonable trial strategy. Thus, there is competent, substantial evidence to support the postconviction court’s finding that this decision was a reasonable trial strategy. Because the decision was reasonable, Lukehart’s trial counsel was not ineffective under
 
 Strickland. See Bowles v. State,
 
 979 So.2d 182, 188 (Fla.2008) (citing
 
 Gaskin,
 
 822 So.2d at 1248 (“Trial counsel will not be held to be deficient when she makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony.”)).
 

 Moreover, to the extent Lukehart is raising an ineffective assistance of counsel claim for trial counsel’s failure to raise the defense of diminished capacity during the guilt phase, we deny relief. We have repeatedly rejected similar claims.
 
 See Evans v. State,
 
 946 So.2d 1, 11 (Fla.2006) (“[D]efense counsel is not ineffective for failing to present the defense of diminished capacity because diminished capacity is not a viable defense in Florida.”);
 
 Hodges v. State,
 
 885 So.2d 388, 352 n. 8 (Fla.2004) (“This Court has held on numerous occasions that evidence of an abnormal mental condition not constituting legal insanity is inadmissible to negate specific intent.”);
 
 Spencer v. State,
 
 842 So.2d 52, 63 (Fla. 2003) (holding that evidence of defendant’s disassociative state would not have been admissible during the guilt phase).
 

 Motion to Relate Back
 

 In his fourth claim, Lukehart contends that the postconviction court erred in denying his amended postconviction motion to relate back to the filing of his shell motion. We agree.
 

 
 *516
 
 “[AJppellate courts apply a de novo standard of review when the construction of a procedural rule ... is at issue.”
 
 Barco v. School Bd. of Pinellas Cnty.,
 
 975 So.2d 1116, 1121 (Fla.2008).
 

 Florida Rule of Criminal Procedure 8.851(a) provides:
 

 This rule shall apply to all motions and petitions for any type of postconviction or collateral relief brought by a prisoner in state custody who has been sentenced to death and whose conviction and death sentence have been affirmed on direct appeal. It shall apply to all postconviction motions filed on or after October 1, 2001, by prisoners who are under sentence of death. Motions pending on that date are governed by the version of this rule in effect immediately prior to that date.
 

 The record reveals that, on September 27, 2001, Lukehart filed a rule 3.850 shell motion to vacate judgment and sentence. On November 28, 2001, the State filed a motion to dismiss the shell motion. The trial court granted the motion to dismiss on June 17, 2002, and allowed Lukehart to file, on or before June 25, 2002, an amended motion for postconviction relief. Luke-hart was given leave to supplement the motion with any additional grounds or to further refine existing grounds based upon public record disclosures that occurred after June 25, 2002. On June 20, 2002, Lukehart filed a motion to vacate judgment of conviction and sentence and a memorandum of law with special request for leave to amend, raising a total of seventeen claims.
 

 On September 28, 2003, Lukehart filed a first amended motion to vacate judgment of conviction and sentence and a memorandum of law with special request for leave to amend and raised a total of seventeen claims. On October 14, 2003, the State filed an objection to the motion to amend the postconviction motion. On October 16, 2003, Lukehart filed a response to the State’s objection to the motion to amend the postconviction motion.
 

 On February 27, 2007, the trial court entertained Lukehart’s motion for leave to amend. The State filed a second objection to Lukehart’s motion to amend his post-conviction motion. On March 5, 2007, the trial court entered an order granting the Lukehart’s motion for leave to amend.
 

 In Lukehart’s first amended motion to vacate judgment and sentence, Lukehart requested that the court reinstate his shell motion as it was filed prior to October 1, 2001. In addition, Lukehart requested the postconviction court to allow his amended motion to relate back to the time of the filing of his shell motion in order to expand his time to file for federal habeas relief.
 

 Clearly, Lukehart’s shell motion was filed September 27, 2001. Additionally, as the trial court did not deny his shell motion until June 17, 2002, his shell motion was pending on October 1, 2001. Thus, Lukehart’s motion for postconviction relief is governed by rule 3.850, and the trial court erred in finding otherwise.
 

 Moreover, numerous postconviction cases in Florida refer to a defendant’s shell motion and subsequent filing of an amended motion for postconviction relief.
 
 See Hartley v. State,
 
 990 So.2d 1008, 1011 (Fla.2008) (shell motion filed initially, amended motion filed later);
 
 Branch v. State,
 
 952 So.2d 470, 474 (Fla.2006) (shell motion filed on May 7, 1998, and second amended motion filed April 1, 2003);
 
 Miller v. State,
 
 926 So.2d 1243, 1248 (Fla.2006) (shell motion filed September 27, 2001, and amended motion filed March 11, 2002);
 
 Knight v. State,
 
 923 So.2d 387, 415 (Fla. 2005) (shell motion filed November 7, 2000, and amended motion filed August 23, 2002);
 
 Howell v. State,
 
 877 So.2d 697, 700
 
 *517
 
 (Fla.2004) (filed a shell motion initially, followed by a amended motion);
 
 Finney v. State,
 
 831 So.2d 651, 656 (Fla.2002) (shell motion filed in 1997 and amended motion filed in 1999);
 
 Washington v. State,
 
 835 So.2d 1083, 1085 (Fla.2002) (shell motion filed in 1997 and amended motion filed in 1999);
 
 Moore v. State,
 
 820 So.2d 199, 206 n. 7 (Fla.2002) (shell motion filed March 26, 1999, and amended motion filed June 22, 1999).
 

 In
 
 Bryant v. State,
 
 901 So.2d 810 (Fla. 2005), this Court noted that Florida Rule of Civil Procedure 1.190(c)
 
 [8]
 
 applies to postconviction cases and concluded that Bryant’s amended motion would have related back to the date of Bryant’s original filing.
 
 Id.
 
 at 818. Similarly, in
 
 Spera v. State,
 
 971 So.2d 754, 761-62 (Fla.2007), this Court relied on
 
 Bryant
 
 and noted that in
 
 Bryant,
 
 “[w]hat we disapproved was the court’s failure, when striking the original motion, to grant leave to amend at that time so that the amended motion would relate back to the date of the original.”
 
 Spera,
 
 971 So.2d at 760-61. To accomplish this end, this Court concluded that it would “allow all defendants an opportunity to amend facially insufficient postconviction claims.”
 
 Id.
 
 at 761. Accordingly, we reverse the postconviction court’s finding and instead conclude that Lukehart’s motion for postconviction relief is governed by rule 3.850 and his amended motion relates back to the date of his original filing.
 

 Motion to Suppress
 

 In his fifth claim, Lukehart asserts that the postconvietion court erred in denying his claim that counsel was ineffective for failing to include an additional argument in the motion to suppress. Lukehart contends that trial counsel should have argued that law enforcement officers took Lukehart into custody under the Baker Act as a pretext to an arrest in violation of his Fourth and Fifth Amendment rights, and thus any statements he made should have been suppressed. We disagree.
 

 The Florida Mental Health Act, commonly known as the Baker Act, is a civil commitment law that provides:
 

 (1) CRITERIA. — A person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness:
 

 (a) 1. The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or
 

 2. The person is unable to determine for himself or herself whether examination is necessary; and
 

 (b) 1. Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services; or
 

 2. There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior.
 

 § 394.463, Fla. Stat. (2010).
 

 Based on the language of the Baker Act, Lukehart’s own testimony, and the testi
 
 *518
 
 mony given by law enforcement officers at both the suppression hearing and at the evidentiary hearing, it is clear that Luke-hart was not taken into custody under the Baker Act as a pretext to an arrest for the disappearance of Hanshaw. The record reveals that during his initial encounter with law enforcement officers immediately following Hanshaw’s disappearance, Luke-hart informed the officers that he had attempted suicide earlier that day. As a result, Lukehart was detained pursuant to the Baker Act. Lukehart contends that law enforcement’s failure to take him to a receiving facility establishes that the Baker Act detention was pretextual and that any statements that he made were obtained in violation of his constitutional rights. One law enforcement officer testified that Lukehart’s neck was red. Law enforcement also found Lukehart’s abandoned car, which Lukehart ran off of the road. Further, law enforcement officers testified that he was not even a suspect in Han-shaw’s disappearance until after 10:80 a.m. on February 26, 1996, when he told a detective that he knew where Hanshaw’s body was located.
 

 On direct appeal, after an extensive review of the suppression hearing testimony, this Court concluded that there was competent, substantial evidence to support the trial court’s denial of Lukehart’s motion to suppress.
 
 Lukehart,
 
 776 So.2d at 918. This Court explicitly considered and rejected the notion that Lukehart was under arrest when he made the statements he sought to suppress and concluded that he intelligently and voluntarily waived his constitutional rights. Because Lukehart was not under arrest for purposes of the Fourth Amendment, probable cause is not implicated in this case. Therefore, Luke-hart’s argument that he was unlawfully seized because law enforcement lacked probable cause is without merit.
 
 See, e.g., Wong Sun v. United States,
 
 371 U.S. 471, 479, 88 S.Ct. 407, 9 L.Ed.2d 441 (1963) (noting that all arrests are unlawful under the Fourth Amendment unless accompanied by probable cause).
 

 Moreover, at the evidentiary hearing, Lukehart had the opportunity to present evidence of the local policy governing the Baker Act. However, Lukehart failed to do so. As a result, it is not clear whether a local policy actually existed or, if there was a local policy, whether there was a violation of the local policy. Thus, Lukehart’s reliance on
 
 Florida v. Wells,
 
 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (concluding that marijuana was properly suppressed because the absence of local policy for the inventory search caused it to be insufficiently regulated for Fourth Amendment purposes), is misplaced and this claim fails for lack of proof.
 

 In
 
 Jenkins v. State,
 
 978 So.2d 116 (Fla.2008), this Court specifically addressed the applicability of the exclusionary rule as a remedy for a violation of a statutory provision.
 
 Id.
 
 at 120-21. There, this Court recognized federal caselaw recognizing that whether evidence discovered in violation of a statute is subject to suppression depends on the legislative intent.
 
 Id.
 
 at 128. This Court also acknowledged Florida caselaw permitting suppression of evidence where the legislature clearly and unequivocally announced its intention to suppress the evidence for a violation of the statute.
 
 Id.
 
 at 129. Finally, this Court examined the specific statute and determined that the legislature did not express a clear and unequivocal intent to permit suppression of evidence for a violation of that specific statute.
 
 Id.
 
 at 130. Thus, this Court concluded that the exclusionary rule was inapplicable to remedy violations of the statute.
 
 Id.
 

 Even if trial counsel had included the local policy to demonstrate that a violation
 
 *519
 
 occurred, the trial court still would have denied the motion to suppress, and its denial would have been affirmed on appeal.
 
 See Fotopoulos v. State,
 
 838 So.2d 1122, 1130-31 (Fla.2002);
 
 Engle v. Dugger,
 
 576 So.2d 696 (Fla.1991) (a court will not label counsel ineffective for failing to raise mer-itless claims);
 
 Card v. State,
 
 497 So.2d 1169 (Fla.1986).
 

 A review of section 394.453, Florida Statutes (1995), reveals that the legislature did not express a clear and unequivocal intent to permit suppression of evidence for a violation of the Baker Act. Section 394.453 defines the legislative intent of the statute and provides:
 

 (l)(a) It is the intent of the Legislature to authorize and direct the Department of Health and Rehabilitative Services to evaluate, research, plan, and recommend to the Governor and the Legislature programs designed to reduce the occurrence, severity, duration, and disabling aspects of mental, emotional, and behavioral disorders. The department is directed to implement and administer mental health programs as authorized and approved by the Legislature, based on the annual program budget of the department. It is the further intent of the Legislature that programs of the department coordinate the development, maintenance, and improvement of receiving and community treatment facilities within the programs of the district as authorized by the Community Alcohol, Drug Abuse, and Mental Health Services Act, part IV of this chapter. Treatment programs shall include, but not be limited to, comprehensive health, social, educational, and rehabilitative services to persons requiring intensive short-term and continued treatment in order to encourage them to assume responsibility for their treatment and recovery. It is intended that patients be provided with emergency service and temporary detention for evaluation when required; that patients be admitted to treatment facilities on a voluntary basis when extended or continuing care is needed and unavailable in the community; that involuntary placement be provided only when expert evaluation determines that it is necessary; that any involuntary treatment or examination be accomplished in a setting which is appropriate, most likely to facilitate proper care and treatment that would return the patient to the community as soon as possible, and the least restrictive of the patient’s liberty; and that individual dignity and human rights be guaranteed to all persons admitted to mental health facilities or being detained under s. 394.463. It is further the intent of the Legislature that the least restrictive means of intervention be employed based on the individual needs of each patient within the scope of available services.
 

 (b) It is the intent of the Legislature that all mental health personnel working in public or private mental health programs and facilities who have direct contact with unmarried patients under the age of 18 years shall be of good moral character.
 

 (2) The Department of Health and Rehabilitative Services shall assume the responsibility for designing and distributing appropriate materials for the orientation and training of persons actively engaged in implementing the provisions of this chapter relating to the involuntary placement of persons alleged to be mentally ill. The department is further directed to ensure that no civil patient is admitted to a state treatment facility unless previously evaluated and found to meet the criteria for admission by a community-based public receiving facility or by a community mental health
 
 *520
 
 center or clinic in cases in which the public receiving facility is not a community mental health center or clinic. Nothing in this act shall be construed to affect any policies relating to admission to hospital staff.
 

 § 394.453, Fla. Stat. (1995). The legislative intent has since been amended; however, it is still devoid of a clear, unequivocal intent that the exclusionary rule operate to suppress any evidence obtained during a violation of the Baker Act. As a result, it appears that the postconviction court correctly found that the exclusionary rule is not a remedy for a violation of section 394.453 unless a constitutional violation has also occurred. Therefore, even if trial counsel had raised this argument in Lukehart’s motion to suppress, the motion still would have been denied and its denial affirmed on appeal on that basis. Accordingly, Lukehart cannot demonstrate prejudice.
 

 Similarly, Lukehart cannot demonstrate deficient performance. To establish deficient performance, the defendant must establish that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.”
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052;
 
 see also Cherry v. State,
 
 659 So.2d 1069, 1072 (Fla.1995). Below, the postconviction court granted an evidentiary hearing on this claim and concluded that the exclusionary rule was inapplicable to a violation of local policy under the Baker Act. Thus, trial counsel cannot be deficient for failing to submit evidence of the local policy.
 
 See Harvey v. State,
 
 946 So.2d 937, 945 (Fla.2006) (concluding that trial counsel was not deficient for failing to submit a booking sheet in support of the motion to suppress where it was determined that the booking sheet would not have been helpful because it established that Harvey signed the booking sheet after he made incriminating statements). Accordingly, we affirm the postconviction court’s denial of relief.
 

 Improper Jury Instruction
 

 In his sixth claim, Lukehart contends that trial counsel was ineffective for failing to object to the felony murder instruction because (1) there were confusing terms in the standard instruction regarding the specific intent requirement of the aggravated battery charge, (2) the State’s closing remarks regarding the term “intentional” diminished the State’s responsibility to prove intent, especially after the State had agreed in the charge conference that the elements required the term “intentional,” and (3) counsel should have renewed the defense’s request for an instruction to clarify “intent” to the jury after the State’s remarks during closing argument at the guilt phase. For the reasons below, this claim is without merit.
 

 In the instant case, the jury instruction for the aggravated child abuse count was consistent with the language contained in the statute. Further, Florida Standard Jury Instruction (Criminal) 16.2 provides the proper instruction for the crime of aggravated child abuse. At trial, the trial court used identical language, reciting the Standard Jury Instruction verbatim, when instructing the jury on this count. This Court has stated that it is “not deficient performance when counsel fails to object to a standard instruction that has not been invalidated by this Court.”
 
 Griffin v. State,
 
 866 So.2d 1, 15 (Fla.2003). Florida Standard Jury Instruction (Criminal) 16.2 has not been invalidated by this Court. Thus, any objection that trial counsel would have made to the jury instruction would have been overruled and affirmed on appeal. As a result, the postconviction court did not err in denying this claim because counsel cannot
 
 *521
 
 be deemed ineffective for failing to make a meritless argument.
 
 See Evans v. State,
 
 975 So.2d 1035, 1043 (Fla.2007) (citing
 
 Melendez v. State,
 
 612 So.2d 1366, 1369 (Fla. 1992)).
 

 In this case, there was evidence of at least four, possibly five, blows to the victim’s skull. As a result,
 
 Brooks v. State,
 
 918 So.2d 181 (Fla.2005) (discussing whether one act of child abuse that simultaneously causes death can support a felony murder conviction), is inapplicable. Thus, this claim is without merit.
 

 Second, Lukehart argues that trial counsel was ineffective for failing to object to the following underlined comments by the State because the comments diminished the State’s responsibility to prove intent:
 

 To find him guilty of aggravated child abuse by committing aggravated battery upon the child it is our burden, mine and Miss Radi, to prove this defendant committed a battery against Gabrielle Han-shaw by intentionally causing bodily harm. And Mr. Edwards wants you to believe that the word intentional is tantamount to premeditation or tantamount to some sort of a motive.
 

 [[Image here]]
 

 But I think Mr. Edwards wants to make us prove motive when he tries to say that intentionally means we’ve got to show that he wanted to do her harm. How do you do that, ladies and gentlemen? Because actions speak louder than words. All of his words about loving Gabrielle do not speak nearly as loudly as the fact that he picked — hit her head against something more than four times, probably five, and that he threw her in a swamp. That’s what you call an intentional act causing bodily harm to Gabrielle Hanshaw. And that while doing that, he knowingly did cause her great bodily harm and that she was under the age of 18 years.
 

 [[Image here]]
 

 And remember, the state does not have to prove motive either for premeditated murder or to show that he intentionally caused the harm.
 

 The felony murder statute is absent of any language requiring that the perpetrator demonstrate an intent to murder the child. Rather, the statute explicitly permits a person who murders a child during the course of aggravated child abuse to be charged with first-degree murder, a capital felony. The allegedly improper comments, when read in context, are not improper and do not diminish the State’s responsibility to prove intent. Rather, the comments are correct statements of law and are used to distinguish premeditated murder and motive from the requirements for aggravated child abuse and felony murder. Any objection to these comments would have been overruled and the ruling would have been affirmed on appeal. Thus, Lukehart has failed to demonstrate that defense counsel was ineffective for failing to object to the State’s comments regarding the word “intentional.”
 

 Third, Lukehart argues that defense counsel was ineffective for failing to renew the request for an instruction to clarify “intent” to the jury after the State’s guilt phase remarks. Based on the aforementioned analysis, Lukehart cannot demonstrate ineffective assistance of counsel. Thus, this claim is without merit. Accordingly, we deny relief.
 

 Lukehart’s
 
 Caldwell
 
 Claim
 

 In his seventh claim, Lukehart contends that the postconviction court erred in denying his claim that counsel rendered ineffective assistance in failing to object when the trial court instructed the jury that their penalty phase role and recommendation were purely advisory. We
 
 *522
 
 disagree. This Court has repeatedly stated that
 
 Caldwell
 
 claims are proper on direct appeal and cannot be raised for the first time on collateral review.
 
 See Hitchcock v. State,
 
 991 So.2d 337, 361 (Fla.2008);
 
 Jones v. State,
 
 928 So.2d 1178, 1183 n. 5 (Fla.2006);
 
 Teffeteller v. Dugger,
 
 734 So.2d 1009, 1026 (Fla.1999). The record reveals that Lukehart did not raise this claim on direct appeal. Accordingly, we affirm the postconviction court’s summary denial of Lukehart’s
 
 Caldwell
 
 claim.
 

 Deposition Testimony
 

 In his eighth claim, Lukehart argues that the postconviction court erred in denying his claim that counsel was ineffective for presenting deposition testimony rather than live testimony from five witnesses during Lukehart’s penalty phase trial. We disagree.
 

 At the evidentiary hearing, Luke-hart established that only one of the witnesses, Repko, was available for purposes of presenting live testimony and that Lukehart could only elicit live testimony from Repko. “A defendant cannot establish ineffective assistance of counsel based on counsel’s failure to call a witness who is unavailable.”
 
 White v. State,
 
 964 So.2d 1278, 1286 (Fla.2007) (citing
 
 Melton v. State,
 
 949 So.2d 994, 1004 (Fla.2006)). Thus, we decline to address whether counsel was ineffective for failing to present the live testimony of the four other witnesses that Lukehart includes in this claim.
 

 With regard to counsel’s presentation of Repko’s deposition testimony rather than live testimony, Lukehart cannot demonstrate ineffective assistance. Trial counsel cannot be deemed ineffective for failing to present testimony from the evi-dentiary hearing that was virtually identical to the testimony presented during the penalty phase.
 
 See Pietri v. State,
 
 885 So.2d 245, 267 (Fla.2004) (concluding that trial counsel was not ineffective for failing to present evidence presented during the evidentiary hearing that was wholly cumulative to the evidence presented during the trial proceedings);
 
 Henyard v. State,
 
 883 So.2d 753, 759, 761 (Fla.2004) (concluding that counsel was not ineffective where the evidentiary hearing testimony was cumulative of the testimony at the penalty phase).
 

 Furthermore, the record shows this is not a case where trial counsel failed to investigate and present available mitigating evidence. The trial court’s findings of mitigation directly refute such a claim. Lukehart does not allege that counsel made no attempt to investigate mitigation or that he failed to present something he otherwise uncovered. Further, Lukehart fails to allege that any additional mitigating or nonstatutory mitigating factors would have been found or supported by Repko’s testimony. He also argues that Repko’s testimony would have challenged the weight of the aggravators found in this case; however, he fails to state with specificity which aggravators would have been affected. Under these circumstances, it appears Lukehart has shown no error in the trial court’s holding that Lukehart failed to demonstrate that counsel was deficient.
 
 See, e.g., Taylor v. State,
 
 3 So.3d 986, 992 (Fla.2009);
 
 Waterhouse v. State,
 
 792 So.2d 1176, 1182 (Fla.2001).
 

 As revealed by the record, trial counsel travelled to Pennsylvania and deposed numerous family members. Trial counsel obtained mitigating evidence regarding Lukehart’s age and the physical and sexual abuse he suffered as a child, as well as evidence that he could not appreciate the criminality of his conduct, that his maturity level was below his age, and that he was gainfully employed at the time of the murder. The trial court gave the miti
 
 *523
 
 gation some weight. Trial counsel’s conduct appears to have been reasonable and does not appear to have fallen below the norms of professional conduct. This evidence supported the trial court’s finding of two statutory and four nonstatutory miti-gators. Because the additional testimony at the evidentiary hearing was largely cumulative, the failure to present the additional testimony does not undermine confidence in the outcome “when viewed in the context of the penalty phase evidence and the mitigators and aggravators found by the trial court.”
 
 Hurst v. State,
 
 18 So.3d 975, 1013 (Fla.2009). Thus, to the extent Lukehart alleges trial counsel was ineffective for failing to properly investigate mitigation evidence, he is not entitled to relief, because he cannot demonstrate either deficient performance or prejudice. Accordingly, we affirm the postconviction court’s denial of this claim.
 

 Improper Prosecutorial Comments
 

 In his ninth claim, Lukehart contends that the postconviction court erred in denying his ineffective assistance of counsel claim regarding trial counsel’s failure to object to allegedly improper prosecutorial comments. We disagree.
 

 Florida jurisprudence permits wide latitude in arguing to a jury.
 
 Moore v. State,
 
 701 So.2d 545, 551 (Fla.1997) (citing
 
 Breedlove v. State,
 
 413 So.2d 1, 8 (Fla.1982)). “Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments.”
 
 Thomas v. State,
 
 748 So.2d 970, 984 (Fla.1999) (citing
 
 Breedlove,
 
 413 So.2d at 8).
 

 First, the postconviction court properly denied this claim as procedurally barred because it could have and should have been raised on direct appeal.
 
 See Spencer,
 
 842 So.2d at 60-61 (substantive claims of prosecutorial misconduct could and should have been raised on direct appeal and thus were procedurally barred from consideration in a postconviction motion).
 

 Second, three of the allegedly improper comments were addressed by this Court on direct appeal.
 
 Lukehart,
 
 776 So.2d at 925, 927. There, we concluded that the claim was procedurally barred because the issue was not preserved by a contemporaneous objection.
 
 Id.
 
 at 927. However, on direct appeal we also explained that even if the claim had not been procedurally barred, it would have been found without merit because the comments did not amount to fundamental error.
 
 Id.
 
 “A fundamental error is defined as an error that ‘reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ”
 
 Spencer,
 
 842 So.2d at 73 (quoting
 
 Kilgore v. State,
 
 688 So.2d 895, 898 (Fla.1996)). “[E]ach case must be considered upon its own merits and within the circum stances pertaining when the questionable statements are made.... ”
 
 Darden v. State,
 
 329 So.2d 287, 291 (Fla.1976). Thus, Lukehart cannot demonstrate prejudice as to those comments.
 

 Juror Interviews
 

 In his tenth claim, Lukehart challenges the postconviction court’s summary denial of his constitutional challenge to rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar. We find this claim without merit. Rule 4-3.5(d)(4) precludes a lawyer from initiating communication or causing another to initiate communication with any member of the jury “except to determine whether the verdict may be subject to legal challenge.” As the postconviction court properly found, this claim is procedurally barred because it could have and should have been raised on direct appeal.
 
 *524
 

 See Reese v. State,
 
 14 So.3d 918, 919 (Fla.2009) (holding that defendant’s constitutional challenge to rule 4 — 8.5(d)(4) was procedurally barred because it should have been raised on direct appeal) (citing
 
 Israel v. State,
 
 985 So.2d 510, 522 (Fla.2008)). Accordingly, we affirm the postconviction court’s denial of this claim.
 

 Florida’s Lethal Injection Protocols
 

 In his eleventh claim, Lukehart claims the postconviction court erred in summarily denying his challenge to the constitutionality of Florida’s lethal injection protocols. As Lukehart correctly concedes, this Court has repeatedly rejected this claim.
 
 See, e.g., Davis v. State,
 
 26 So.3d 519, 525 n. 3 (Fla.2009),
 
 cert. denied,
 
 — U.S.-, 130 S.Ct. 3509, 177 L.Ed.2d 1097 (2010);
 
 Reese,
 
 14 So.3d at 919;
 
 Tompkins v. State,
 
 994 So.2d 1072, 1081 (Fla.2008). “Florida’s current lethal injection protocol passes muster under any of the risk-based standards considered by the
 
 Baze [v. Rees,
 
 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) ] Court (and would easily satisfy the intent-based standard advocated by justices Thomas and Scalia).”
 
 Schoenwetter v. State,
 
 46 So.3d 535, 550 (Fla.2010) (emphasis omitted) (quoting
 
 Ventura v. State, 2
 
 So.3d 194, 200 (Fla.2009)). Accordingly, we affirm the postconviction court’s denial of this claim.
 

 Cumulative Error
 

 In his twelfth claim, Lukehart contends that the postconviction court erred in finding that cumulative error was not present. This Court has repeatedly held that where the alleged errors, when viewed individually, are “either procedurally barred or without merit, the claim of cumulative error also necessarily fails.”
 
 Israel,
 
 985 So.2d at 520 (quoting
 
 Parker v. State,
 
 904 So.2d 370, 380 (Fla.2005)). If multiple errors are found and deemed harmless individually, this Court has recognized that the cumulative effect of such errors may “deny to defendant the fair and impartial trial that is the inalienable right of all litigants.”
 
 Brooks v. State,
 
 918 So.2d 181, 202 (Fla.2005) (quoting
 
 Jackson v. State,
 
 575 So.2d 181, 189 (Fla.1991)). Where several errors are identified, this Court “considers the cumulative effect of evidentiary errors and ineffective assistance claims together.”
 
 Suggs v. State,
 
 923 So.2d 419, 441 (Fla.2005) (citing
 
 State v. Gunsby,
 
 670 So.2d 920, 924 (Fla.1996)). In the instant case, only one of the alleged errors has merit — Lukehart’s claim that the trial court erred in finding that Luke-hart’s amended motion did not relate back to the date of his original shell motion. This error, standing alone, did not deprive Lukehart of a fair and impartial trial and does not warrant reversal. Thus, Luke-hart is not entitled to relief. Accordingly, we affirm the postconviction court’s denial of Lukehart’s motion for postconviction relief.
 

 PETITION FOR WRIT OF HABEAS CORPUS
 

 Proportionality
 

 Lukehart challenges this Court’s proportionality determination from the direct appeal, and again, is also attempting to relitigate the validity of the underlying prior violent felony conviction that was used as an aggravator. This claim is procedurally barred, as it was raised and rejected on direct appeal.
 
 See Ferrell v. State,
 
 918 So.2d 163, 178 (Fla.2005) (citing
 
 Smith v. State,
 
 445 So.2d 323, 325 (Fla.1983) (“Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.”));
 
 see also Allen v. State,
 
 854 So.2d 1255, 1262 (Fla.2003) (finding inmate was precluded from raising claim relating to proportionality review in habeas petition as claim had already been raised and re
 
 *525
 
 jected on direct appeal). Accordingly, we deny habeas relief on this claim.
 

 Florida’s Lethal Injection Protocol
 

 Next, Lukehart alleges that this Court should grant habeas relief because new scientific evidence makes clear that the existing procedure for lethal injection is unconstitutional. We disagree. This issue was previously raised in Lukehart’s motion for postconviction relief. The post-conviction court summarily denied this issue. Lukehart also contemporaneously raises the eleventh issue of his accompanying appeal from the denial of his rule 3.850 motion for postconviction relief. “Habeas petitions are the proper vehicle to advance claims of ineffective assistance of appellate counsel. However, claims of ineffective assistance of appellate counsel may not be used to camouflage issues that could and should have been presented on direct appeal or in a proper postconviction motion.”
 
 Davis v. State,
 
 928 So.2d 1089, 1126 (Fla. 2005) (citations omitted) (citing
 
 Rutherford, v. Moore,
 
 774 So.2d 637, 643 (Fla.2000));
 
 Thompson v. State,
 
 759 So.2d 650, 660 (Fla.2000). Thus, this claim is procedurally barred. Accordingly, we deny habeas relief on this claim.
 

 Free Speech
 

 Finally, Lukehart urges this Court to grant his petition for writ of habeas corpus and argues that the administration of pancuronium bromide during the lethal injection procedure will violate his right to free speech because it will render him unable to communicate any feeling of pain that may result if the execution is improperly performed. This Court has considered and repeatedly rejected similar claims.
 
 See, e.g., Rolling v. State,
 
 944 So.2d 176, 180 (Fla.2006);
 
 Rutherford v. State,
 
 926 So.2d 1100, 1115 (Fla.2006). Thus, we deny habeas relief on this claim.
 

 Accordingly, we affirm the postconviction court’s denial of rule 3.850 relief and we deny habeas relief.
 

 It is so ordered.
 

 PARIENTE, LEWIS, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 CANADY, C.J., concurs in result.
 

 QUINCE, J., recused.
 

 [1]
 

 .Lukehart’s claims on appeal were: (1) the trial court erred in refusing to suppress Luke-hart’s statements; (2) the trial court erred by limiting cross-examination; (3) Lukehart’s convictions of first-degree murder and aggravated battery were invalid because of insufficient evidence of premeditation and the lack of a felony independent of the homicide; (4) the trial court erred in instructing the jury on justifiable or excusable homicide; (5) Luke-hart’s death sentence was disproportionate; (6) the trial court erred in finding that the murder in the course of a felony aggravator had been established; (7) the trial court erred in applying the new aggravator of a crime committed while on felony probation; (8) the trial court erred in finding both murder in the course of a felony and that the victim was under twelve as aggravators (improper doubling); (9) the victim-under-twelve aggravator and the standard jury instruction on the ag-gravator were unconstitutional; (10) the trial court erred in allowing a collateral crime (found to be a prior violent felony) to be a feature of the penalty phase; (11) the prosecutor’s closing argument comments during the penalty phase were fundamental error; and (12) the trial court erred regarding the sentence for the noncapital conviction and the restitution orders.
 

 [2]
 

 . The Baker Act, also known as the Florida Mental Health Act, provides in part that "a law enforcement officer shall take a person who appears to meet the criteria for involun-taty examination into custody.” § 394.463(2)(a)(2), Fla. Stat. (1995).
 

 [3]
 

 . In his motion, Lukehart raised the following claims: (1) the trial court erred in striking his shell motion; (2) Florida's death penalty statute is unconstitutional and violates
 
 Ring v.
 
 
 *511
 

 Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (3) trial counsel was ineffective during the guilt phase and the penalty phase; (4) trial counsel was ineffective for failing to object to jury instructions on the ground that they shifted the burden to the defendant to prove that a life sentence was appropriate; (5) the “victim under twelve” aggravator is unconstitutional; (6) the trial court violated the mandates of
 
 Caldwell v. Mississippi,
 
 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by informing the jury that their sentencing recommendation was advisory; (7) a Florida rule of professional conduct prohibiting juror interviews is unconstitutional; (8) Florida’s lethal injection protocol constitutes cruel and unusual punishment and violates the ex post facto clause; (9) Lukehart’s execution would violate the dictates of
 
 Ford v. Wainwright, 477
 
 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); (10) Lukehart’s death sentence violates
 
 Furman v. Georgia,
 
 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its progeny; (11) Lukehart’s mental health expert was ineffective under
 
 Ake v. Oklahoma,
 
 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (12) the prosecutor’s comments violated Lukehart’s right to a fair trial; (13) Florida’s statute prohibiting the imposition of a sentence of death to be imposed on a mentally retarded defendant, section 921.137, Florida Statutes (2001), violates substantive due process because the statute does not apply retroactively; (14) the imposition of the death penalty on a mentally retarded defendant violates equal protection and due process; (15) Lukehart’s death sentence constitutes cruel and unusual punishment in violation of
 
 Atkins v. Virginia,
 
 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); (16) the trial court failed to consider mitigating evidence in violation of the Eighth Amendment and
 
 Campbell v. State,
 
 571 So.2d 415, 419 (Fla.1990); and (17) cumulative error.
 

 [4]
 

 .
 
 Huff v. State,
 
 622 So.2d 982 (Fla.1993).
 

 [5]
 

 . In the instant case, Lukehart argues that the postconviction court erred in denying his rule 3.850 motion regarding whether: (1) counsel was ineffective for failing to challenge the prior violent felony aggravator during the penalty phase, (2) counsel was ineffective for failing to file a motion to cease Lukehart’s medication and a motion for continuance, (3) counsel was ineffective for failing to present Dr. Harry Krop during the guilt phase, (4) Lukehart’s amended postconviction motion should relate back to the filing of his shell motion, (5) counsel was ineffective for failing to include an additional argument in the motion to suppress, (6) counsel was ineffective for failing to properly argue and object to the jury instructions and the State's allegedly improper arguments regarding the instructions, (7) counsel was ineffective pursuant to
 
 Caldwell v. Mississippi, 472
 
 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), (8) counsel was ineffective for failing to present live testimony rather than deposition testimony during the penalty phase, (9) counsel was ineffective for
 
 *512
 
 failing to object to allegedly improper prose-cutorial comments, (10) the rule prohibiting juror interviews is unconstitutional, (11) Florida’s lethal injection protocols are unconstitutional, and (12) cumulative error is present.
 

 [6]
 

 . In his petition for writ of habeas corpus, Lukehart raises the following three claims: (1) this Court should revisit its prior proportionality review in light of Page's uncontro-verted testimony at the postconviction eviden-tiary hearing, (2) Florida’s lethal injection protocol violates that Eighth Amendment, and (3) the inclusion of pancuronium bromide in Florida's lethal injection protocol violates free speech.
 

 [7]
 

 .
 
 Johnson v. Mississippi,
 
 486 U.S. 578, 590, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (holding that consideration of a subsequently vacated conviction to support an aggravating factor violates the Eighth Amendment).
 

 [8]
 

 . Rule 1.190(c) provides that "[w]hen the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set, forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading.”